ALATHAEA CAMP v. ESTHER CARPENTER AND THEODORE GRIMSON.

ESTHER CARPENTER v. ALATHAEA CAMP.

*Notary's certificate—Bona fide holder of forged mortgage.*

1. A notarial certificate is prima facie but not conclusive evidence of the authority of the instrument to which it is attached; and its force may be rebutted by the testimony of the person who appears to have executed the instrument.

2. A forged mortgage cannot be valid even in the hands of a bona fide holder, unless, indeed, the latter came into possession of it under circumstances which establish an equity in his favor against the party apparently liable upon it.

3. One who takes a mortgage signed only by a married woman, with knowledge that it does not relate to her separate property, and that its execution is clandestine, can hardly claim any equities against her if the mortgage should turn out to be forged.

Appeal from the Superior Court of Grand Rapids. (Parrish, J.) Jan. 8–9.—Jan. 15.

BILL to foreclose, and CROSS-BILL to cancel a certain mortgage. Esther Carpenter appeals. Reversed; original bill dismissed; decree entered in accordance with the cross-bill.

*Mark M. Powers* for Alathaea Camp. The facts of the acknowledgment of a deed and of the identity of the person acknowledging are essential parts of a notary's certificate and must be stated: Martindale's Conveyancing 221; a statute requiring identification is mandatory, not merely directory: *Pinckney v. Burrage* 31 N. J. L. 21; *Heeter v. Glasgow* 79 Penn. St. 79; *Jamison v. Jamison* 3 Whart. 457; no evidence can be received to contradict a certificate of acknowledgment for the purpose of making the deed ineffectual: *Greene v. Godfrey* 44 Me. 25; *Barnett v. Shackleford* 6 J. J. Marsh. 532; parol evidence cannot, in the absence of fraud, be admitted to contradict a fact expressly stated in the certificate of acknowledgment of a deed, and which the law requires the acknowledging officer to state: *Harpending's Executors v. Wylie* 14 Bush 380; 1 Jones on Mortgages (3d ed.) § 538; a certificate is not invalid or affected by the grantor's want of recollection: *Tooker v. Sloan* 30 N. J. Eq. 394: the officer cannot impeach his own certificate: *Homœpathic Mut. L. Ins. Co. v. Marshall* 32 N. J. Eq. 103, note; a defective certificate cannot be aided by the parol testimony of the officer taking the acknowledgment, even to validate and make regular the deed: *Jourdan v. Jourdan* 9 S. & R. 268; nor to invalidate it: *Marston v. Brittenham* 76 Ill. 611; *Russell v. Bapt. Theol. Union* 73 Ill. 337; *Kerr v. Russell* 69 Ill. 666; *Johnson v. Van Velsor* 43 Mich. 219; *Hourtienne v. Schnoor* 33 Mich. 274.

*Fred A. Maynard* for Esther Carpenter.

CAMPBELL, J. The original bill was to foreclose a mortgage alleged to have been made by Mrs. Carpenter to complainant, and the cross-bill was filed to have the same mortgage declared void as a forgery and discharged from the registry of Kent county.

The parties live at Grand Rapids, and are both married women, living with their husbands. The note and mortgage purport to have been given on the 26th day of July, 1881, for $500 payable in three years with interest at eight

per cent. payable semi-annually. The mortgage purports to have been acknowledged on the same day before Henry Grinnell, a notary at Grand Rapids, and witnessed by him and George Thomson. The note is not witnessed, and there is no proof of its execution except by comparison of hands.

The facts in regard to the origin of the mortgage seem to be that about the date of the mortgage one Freeman Lathrop, a land-agent, had in his possession a note purporting to have been made by Mrs. Carpenter in the preceding March at six months, for $300, payable to the order of Lewis Gale, which Gale had negotiated on his own account. Gale applied to Lathrop, stating that Mrs. Carpenter wanted to raise a loan, on mortgage, of $500 on the property in question. Lathrop arranged with Gale to obtain the money from complainant, and drew up the papers. Gale intimated that it would be more convenient to have the papers executed somewhere else, and took them and afterwards brought them back executed. The $300 was held for the benefit of Mr. Powers, complainant's present solicitor, and was not secured, but Powers claimed it was understood it would at some time be secured, but that Mrs. Carpenter would have to watch her opportunity to do it without her husband's knowledge. On the return of the papers Lathrop reserved $25 for his charges, and gave Gale the $300 note and $175 in money.

As already stated, there is no proof of the execution of the note. The mortgage was acknowledged before Grinnell at his office. Gale came in and told Mr. Grinnell that a lady who was with him desired to acknowledge a mortgage. Grinnell has testified on different occasions and his recollection does not agree in some important particulars at the different depositions. It appears beyond question that at the time of the acknowledgment he did not know the person acknowledging. It appears also that at a comparatively early date, when he first deposed, he could not recognize Mrs. Carpenter as the person. At his last deposition his impressions were that she was the person. There is also

a similar change in his recollection as to his having seen the mortgage signed. The subscribing witness has no recollection of the matter at all, beyond the mere fact of signing for unknown parties. Grinnell's recollection, at its strongest, as to the signature, only includes the mortgage and substantially negatives any other signature at that time. He does not claim to have seen the note.

Mrs. Carpenter positively denies the execution of either of the notes and of the mortgage. No witness who knows her handwriting was called to prove the signatures, and the testimony of so-called experts was confined to a comparison of her signature on some genuine papers shown to them, with the note and mortgage. No witness claimed that the signatures were identical, as they manifestly are not, but some thought there were such indications as showed them to have been written by the same person, while others thought differently. The experts do not seem to have had their attention called to the signed papers forming part of the records of this case. We have before us several of these signatures in addition to the exhibits.

The court below sustained the validity of the mortgage, upon the ground, chiefly, that the notary's certificate imported such verity as not to be overthrown legally by the testimony of the alleged maker of the mortgage, and held that there was no other testimony in the case of importance except an alleged alibi at the time of the acknowledgment, on which he did not regard the proof as conclusive. The judge did not express himself on the other questions of fact, beyond holding that the conviction of Gale for the forgery was not evidence against complainant.

The testimony is long, but we do not think it necessary to discuss it at large. We have no doubt whatever that the papers were forged. And we should confine ourselves to this single conclusion, except for the fact that in our view the rules of law heretofore laid down in similar cases by this Court seem to have been misapprehended.

The notary's certificate is made prima facie evidence. It is claimed by complainant that such a certificate is of a con-

clusive character, and especially so in favor of an innocent mortgagee.

There is no rule which could lawfully make any officer's certificate of acknowledgment conclusive evidence of the identity of persons or of the execution of a conveyance which would not have the effect of depriving a person of his property without his own act or fault. Such a transfer would very clearly be beyond legislative authority. The question must necessarily be open to proof whether the instrument relied on is genuine. In *Hourtienne v. Schnoor* 33 Mich. 274, and *Johnson v. Van Velsor* 43 Mich. 219, it was intimated that such official action must, where had before an officer knowing the parties, receive great consideration. In both of those cases the officers swore to such facts as raised a distinct issue of veracity, and in both, his testimony was accompanied by strong corroboration. In the present case, when the notary swore he did not know the person whom he certified he knew, he deprived his certificate of all the foundation on which the law allows the presumption to be raised, and the subscribing witness, who testified to his own ignorance, destroyed also the presumptions that in some cases attend the action of such witnesses in the absence of suspicion. It would be very absurd to allow a certificate such weight as is claimed for it here, when the notary himself contradicts his own statements, and shows its want of truth. It is not a very satisfactory state of things when a forgery can gain even presumptive credit from the action of an officer who has certified without foundation for his action.

No other question of law is involved in the case. As already stated we have no doubt at all that Gale made or procured the forgery of the securities in controversy, as well as of the note made earlier. If forged, no amount of good faith would profit the holder, who has no equity against the party whose name is forged. Mrs. Camp is unquestionably innocent of any fault. But we do not think the record indicates much caution in parties who take a married woman's notes which they have reason to suppose

were not given for her own purposes, or advance money belonging to her to a person whose agency they take no pains to inquire into, and who gives them to understand the matter is not intended to be made public.

The decree must be reversed with costs of both courts; the original bill must be dismissed and a decree rendered on the cross-bill for the cancellation of record and delivery up of the note and mortgage.

The other Justices concurred.