OREGON SHORT LINE RAILROAD COMPANY v. HALLOCK et al.

No. 2361. Decided August 5, 1912 (126 Pac. 394).

1. TAXATION—ASSESSMENT—DESIGNATION OF OWNERS. Under Comp. Laws 1907, section 2529, providing that unpartitioned property of deceased persons may be assessed to their heirs, guardians,

etc., or any one of them, evidence that unpartitioned property was assessed to "S. P. R. *et al.*," S. P. R. being one of the heirs of the deceased owner, was sufficient to sustain a finding that the property was properly assessed, and the taxes properly levied so as to create a lien thereon.  (Page 382.)

2. TAXATION—TAX DEED—ATTACK—PAYMENT OF TAXES AS CONDITION PRECEDENT.  A tax deed will not be set aside as a cloud on the title for mere irregularities, not affecting the substantial justice of the tax, without requiring the payment to the holder of the tax title of all taxes and costs paid by him which were a just and legal charge on the land, with interest.  (Page 383.)

3. TAXATION—TAX TITLES—INTEREST ACQUIRED BY HOLDER OF CERTIFICATE OF SALE.  Under Comp. Laws 1907, section 2597, providing that a tax on real property is a lien thereon, and section 2595, providing that such lien is in legal effect a judgment continuing in force until the taxes are paid, a person purchasing the property at a tax sale and receiving a certificate of sale acquires by subrogation a lien on the property.  (Page 384.)

4. EMINENT DOMAIN—PROCEEDINGS—PARTIES.  Under Comp. Laws 1907, section 3595, providing that in an eminent domain proceeding any person claiming an interest in the property sought to be condemned may appear and defend, the person who has purchased the property at a tax sale and received a certificate of sale may be made a party to the proceeding, or may voluntarily intervene and have his lien established and the amount thereof ascertained.  (Page 384.)

5. EMINENT DOMAIN—CONCLUSIVENESS OF JUDGMENT—PERSONS CONCLUDED.  A purchaser of land at a tax sale, who has received a certificate of sale, is not deprived of his lien on the property or his right to redress by a proceeding to condemn such property, where he is not made a party and does not voluntarily intervene.  (Page 384.)

6. EMINENT DOMAIN—INCUMBRANCES—SUBJECT-MATTER TO WHICH LIEN ATTACHES.  Ordinarily liens against property, of which a portion only is condemned, are shifted to the portion not condemned, to the extent, at least, that the portion condemned is held only for the deficiency in case the proceeds from a sale of that not condemned are insufficient to pay the liens.  (Page 385.)

7. EMINENT DOMAIN—INCUMBRANCES—RIGHTS AND LIABILITIES OF PURCHASER OF PROPERTY.  Where a portion of a lot which had previously been sold for taxes was condemned, but the holder of the tax title was not made a party, and no provision for payment of his lien out of the award was made, and there was nothing to show that the uncondemned portion of the lot was

not ample security for its proportionate share of the taxes, it was improper, in a subsequent suit to quiet title, to adjudge that the whole amount of the taxes was a lien on the property condemned; and only its proportionate share of the taxes should have been adjudged to be such lien. (Page 385.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by the Oregon Short Line Railroad Company against E. S. Hallock and another.

Judgment for defendant. Plaintiff appeals.

REVERSED WITH DIRECTIONS.

*P. L. Williams, George H. Smith* and *H. B. Thompson* for appellant.

*Booth, Lee, Badger, Rich & Parke,* and *Dey, Hoppaugh & Fabian* for respondents.

FRICK, C. J.

On the 21st day of October, 1905, appellant commenced this action to quiet the title to a part of lot 6, block 81, plat A, Salt Lake City Survey. The portion of lot 6 in question is the portion marked "X" in the following plat:

The action, for some reason not disclosed by the record, was permitted to lie dormant until last December, when it was tried to the court, and on the 15th day of January, 1912, findings of fact and judgment were duly entered.

The material and undisputed facts in substance, are: That in June, 1902, appellant commenced a proceeding under our statute in the district court of Salt Lake County against the owners of said lot 6 to condemn that portion thereof marked "X" on the foregoing plat; that when the proceedings were commenced an order was made by said court, which permitted appellant to take possession of the portion sought to be condemned, which it did; that subsequently, on the 26th day of April, 1904, said court entered its final order or judgment in condemnation, and on payment by appellant of the sum of $13,000, in the language of the decree "as compensation for the land taken and damages sustained by the defendants to the remaining portion of the said land," the title to the portion marked "X" was by said judgment vested in appellant, and it has used the same continuously for railroad purposes; that at the time said condemnation proceedings were commenced, and when said judgment of condemnation was entered, and ever since the year 1900, and, perhaps, for some time prior thereto, all of said lot 6 was owned in common, undivided and unpartitioned, by the heirs of one Samuel Russell, deceased; that in the years 1901 and 1902 all of lot 6 was assessed in the name of "Samuel P. Russell et al."; that said Samuel P. Russell is one of the heirs aforesaid, and was the owner of an undivided two thirty-thirds of said lot 6; that the taxes for said years of 1901 and 1902 remained unpaid, and the said respondent E. S. Hallock purchased said lot 6 at tax sale from the county treasurer of Salt Lake County, and received a certificate of sale from him; that the assessed valuation of said lot 6, with the improvements thereon, for the year 1901 was $4920, and for the year 1902 $4825, and the taxes for the former year amounted to $160.67, and for the latter $154.15, which with costs and accrued interest to the date judgment was entered in this case, amounted to the sum of $717.96; that for the year 1903 the property was as-

sessed in the same manner, and lot 6 was again sold for the taxes for that year by the treasurer aforesaid to Stephen Hays, and the taxes for that year, with accrued interest and costs at the date of judgment, amounted to $239.36, after deducting a two thirty-third part thereof, which had been redeemed by one of the heirs.

The court entered judgment in favor of Hallock for the sum of $717.96, and in favor of Hays for the sum of $239.36. The fact of the redemption of the portion redeemed, as aforesaid, is immaterial for the purposes of this decision, and will not be referred to hereafter. The court decreed the foregoing amounts to be a lien upon that portion of lot 6 marked "X," and further decreed that, unless appellant paid the whole of said amounts within 30 days from the entry of judgment, the portion of lot 6 marked "X" be sold, and the proceeds derived from said sale be applied (1) to the payment of costs of sale, (2) to the payment of the judgment aforesaid, and (3), if any surplus remained, that the same be paid to appellant.

Appellant has assigned numerous errors, among which are that the court erred in its conclusions of law and in entering judgment as aforesaid. Counsel for appellant also insist that the respondents produced no legal nor competent evidence that said lot 6 was legally assessed for taxation, nor that the taxes in question were legally levied for the several years above mentioned.

With regard to the objections to the admission of the record evidence which was produced by respondents to show a proper assessment of lot 6, it must suffice to say that under the great weight of authority the objections interposed at the trial were too general to permit us to review the court's rulings with respect thereto. Moreover, the record and other evidence that was produced by respondents to show that the property was properly assessed in the name of Samuel P. Russell *et al.*, by virtue of our statute (Comp. Laws 1907, sec. 2529), was sufficient to sustain the court's findings that lot 6 was properly assessed, and the taxes in

question properly levied for the purpose of creating a lien against said lot 6.

It has often been held that mere irregularities are insufficient to invalidate an assessment and levy of taxes, when the same are assailed in an action like the one at bar. The law which controls the courts in such actions is well stated by the author in Black on Tax Titles (section 442) in the following words:

"The maxim, 'He that seeks equity must do equity,' requires that a party seeking to have a tax deed set aside as a cloud upon his title to real estate must offer to repay to the purchaser the amount of all taxes and costs paid by him which were a just and legal charge upon the land, with interest; and it is error to set aside a tax sale for mere irregularities, not affecting the substantial justice of the tax, without requiring such payment. And, further, it is not enough to decree that such repayment be made; but the court should make it a condition precedent to setting aside the tax deed."

A large number of cases in support of the foregoing text are cited by Mr. Black in a footnote, to which we refer the reader without specially citing the cases here.

The contentions, therefore, that the court erred in overruling appellant's objections to the admission of evidence, and that it erred in finding that lot 6 was properly assessed for taxation, and that the taxes in controversy were properly levied for the years aforesaid, cannot be sustained.

The serious question in the case, however, is whether the conclusions of law and judgment are supported by the undisputed facts. As we have pointed out, lot 6 was assessed as one parcel, upon which the taxes for the years in question were levied before final judgment in condemnation was entered in favor of appellant. Respondents' counsel therefore contend that the appellant obtained title to that portion of lot 6 marked "X" by virtue of the judgment of condemnation, and that the title was "subject to such liens or incumbrances as were legally attached to the property." If, for the purposes of this case, counsel's statements be assumed to be correct, yet the question remains to be answered whether that portion

of lot 6 which was condemned, and the title to which passed
to appellant, can be burdened with the entire tax that was
levied upon the whole of said lot for the years aforesaid.

By virtue of Comp. Laws 1907, section 2597, the tax in
question became a lien against the whole of lot 6 from the
first Monday in January of each year; and by virtue of sec-
tion 2595 such a lien was in legal effect a judgment,
which continues in force until the taxes are paid.   3, 4
When the respondents purchased the property at the
tax sale, the lien passed to them by virtue of the law of subro-
gation; and thus, when appellant obtained title to that por-
tion of lot 6 marked "X," respondents were lienholders, and,
under the provisions of Comp. Laws 1907, section 3595,
could either have been made parties to the condemnation pro-
ceedings by appellant, or could have voluntarily intervened in
said proceeding at any time before final judgment, whether
they were made parties or not.   Had respondents been made
parties to the condemnation proceedings, or had they inter-
vened therein, they, under the general rules of law, could have
had their liens established and the amounts thereof ascer-
tained.   Had this been done, the court, no doubt, would have
required the owners of the condemned property to discharge
such liens out of the fund which appellant was required to
pay as compensation and damages for the property taken and
damaged.   (See 2 Lewis, Eminent Domain [3 Ed.], sec-
tions 524 and 540.)

The fact, however, that respondents were neither made
parties, nor intervened in the condemnation proceedings, did
not deprive them of their liens nor of their right to re-
dress.   (See same author and volume, section 897.)   5
If, however, respondents suffered no injury by not be-
ing parties to the condemnation proceedings, they likewise
cannot, by reason thereof, gain an advantage as against appel-
lant.   Having therefore neither gained nor lost any rights as
against appellant, what are the rights of respondents in this
proceeding?

Ordinarily where there are liens against property, of which
a portion only is condemned, the liens are shifted onto that

portion which is not condemned, to the extent, at least, that the portion condemned is held only for the deficiency, if any, in case the proceeds derived from a sale of the portion not condemned are insufficient to pay off the liens. (*Houck v. Gue,* 30 Neb. 113, 46 N. W. 280.) The mere fact that a part of lot 6 was taken by condemnation proceedings, rather than voluntarily alienated by the owners, does not change the general rule that the portion which is un-sold or retained by the owners is burdened with the lien to the extent aforesaid. (*Severin v. B., C. R. & M. Ry. Co.,* 38 Iowa, 463.)

In the case at bar, we are, however, not required to pass upon the question just discussed, for the reason that appellant seemingly does not dispute respondents' contention that the title to that portion of lot 6 marked "X" passed to appellant, "subject to such liens or incumbrances as were legally attached to the property" condemned, and that the unpaid taxes, if legally assessed and levied, constituted a lien against all of lot 6. All that appellant contends for is that the court erred in charging the whole of the taxes levied against lot 6 upon that portion thereof which was condemned by it. The question we are called on to pass upon is therefore limited io the contention just stated. In our judgment, this case comes within the rule laid down by the Supreme Court of Nebraska, in the case of *State v. M. P. R. Co.,* 75 Neb. 4, 105 N. W. 983. In that case it was held that the unpaid taxes constituted a lien against the whole property, and that the railroad company, in failing to make the person claiming the lien a party to the condemnation proceedings, took the property subject to such lien. But it is not held in that case, nor have counsel for respondents cited any, and we have found none, wherein it is held that, where a portion is severed by condemnation proceedings from an entire tract, the portion so severed and condemned can be charged with the taxes levied against the whole tract.

The undisputed facts in the case at bar are that lot 6 is a large lot containing one and one-fourth acres; that the portion

condemned contains less than one-fourth of an acre, and thus contains less than one-fifth of the whole of lot 6. The record discloses no reason why the condemned portion of lot 6 should be charged with more than its proportion of the taxes, according to the area contained in that portion when compared with the area contained in the whole of lot 6. Nor is there anything to show why the uncondemned portion of lot 6 is not ample security for its portion of the taxes, being approximately four-fifths of the whole taxes.

We are of the opinion that, under the undisputed facts and peculiar circumstances of this case, the appellant should be required to pay such proportion of the whole tax remaining unpaid as the area of that portion of lot 6 which was condemned bears to the whole area of said lot. The facts were all before the trial court; and it is an easy matter for that court either to make, or require some one to make, a computation of the exact amount of the unpaid taxes, interest, and costs that appellant should pay upon the portion of lot 6 marked "X." Whatever fraction of the whole of lot 6 the condemned portion amounts to, the same proportion or fraction of the whole of the taxes, interest, and costs should be charged against the portion marked "X." Before the final judgment of condemnation, the title to lot 6 was in the heirs of Samuel Russell, deceased, and, ordinarily, they should have paid the taxes upon what was their own. If it be contended, however, that, in view that appellant was in possession and was using the property, therefore it should have paid the taxes, the answer is again obvious, namely, that in any event, under any rule that may be applied, it was only required to pay the taxes upon that portion of which it was in possession, and not also upon that which was owned and in possession of the heirs.

It may be that if appellant had made the respondents parties to the condemnation proceedings that the amount they had advanced for taxes would have been ordered paid out of the condemnation and damage money which was paid to the owners of lot 6. Such an order cannot now be made, because appellant voluntarily paid the money to the heirs as

owners of the property condemned and damaged. The unpaid taxes thus remained a subsisting lien against the whole of lot 6; and for the reasons already stated, we have no alternative save to require appellant to pay the proportion of the taxes which are a lien upon that part of lot 6 which it has condemned.

The judgment, for the purpose of being modified, is therefore reversed, and the conclusions of law, so far as they are in conflict with the views herein expressed, are vacated and set aside. The court is directed to ascertain the exact area that appellant has condemned from lot 6, aforesaid, as compared with the area of the whole of said lot; to make conclusions of law in conformity with the views herein expressed; to enter judgment requiring the appellant to pay into court, within a reasonable time to be fixed by the court, the proportion of the whole tax that the area condemned bears to the area of lot 6, as hereinbefore indicated; and, in case appellant shall within said time pay, or cause to be paid, into court the amount fixed and determined by the court as aforesaid, with the accrued interest and costs, then, and in such event, the court shall enter a judgment quieting the title to that portion of lot 6 marked "X" in appellant and in case appellant fails to comply with the orders and judgment of the court, as aforesaid, the court shall either dismiss the complaint at its costs, or, in lieu thereof, may order that that portion of lot 6 marked "X" be sold, and the proceeds of the sale applied as follows: (1) To the payment of that portion of the whole tax, interest, and costs which is found to be a lien upon the portion of lot 6 marked "X;" and (2) to pay the remainder, if any, to appellant. Neither party to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.