## SHIPP v. SHEFFIELD.

No. 6290.   Decided October 21, 1941.   (117 P. 2d 996.)

See 61 C. J. Taxation, sec. 2062; 26 R. C. L. 439 (8 Perm. Supp. p. 5774).

*Stephens, Brayton & Lowe* and *Ralph A. Sheffield,* all of Salt Lake City, for appellant.

*Seaton Prince* and *Grant Macfarlane,* both of Salt Lake City, for respondent.

MOFFAT, Chief Justice.

The first issue presented to the trial court in this cause under a short form of complaint was a request to quiet title to lots 3 and 4, Plat D, Salt Lake City Survey by the plaintiff who claimed ownership based on a tax deed to one of the lots and a deed from a third party whose claim was based upon a tax deed to the other lot. The complaint contained the usual prayer that defendant set forth the nature of his claim and that defendant be decreed to have no estate or interest in the property and that plaintiff's title thereto was valid and good.

Defendant answered, admitting defendant claimed an interest and estate in the property described in the complaint, to wit: as administrator with will annexed of the estate of E. S. Hallock, deceased, and denied the other allegations of the plaintiff's complaint, but did not state the nature of the claim or the source or type of interest claimed.

The cause went to trial upon the issues made. Plaintiff introduced in evidence a tax deed from Salt Lake County, dated September 1, 1939, to Lot 4 and also a tax deed dated December 2, 1938, from Salt Lake County to one Willard D. Rogers, covering Lot 3, then a deed from Willard D. Rogers to the plaintiff for said Lot 3. Plaintiff rested.

Defendant moved a dismissal. The motion was denied.

Defendant called as his witness one of counsel for plaintiff and over objection secured the introduction of an abstract of title to the property. As a part of defendant's case and the receiving of the abstract in evidence it was shown that plaintiff had secured a deed from the owner of the fee title to lots 3 and 4 in question, he having purchased it from Jennie R. M. Kinney on August 30, 1939.

Defendant introduced in evidence a tax deed to the premises from Salt Lake County to E. S. Hallock, defendant's testator, dated March 24, 1922, covering the alleged taxes

from 1917 for which he had paid $54.31. It was also shown that defendant's testator had paid subsequent taxes in regard to the property as follows: Taxes for 1918 to 1920, $237.11; for 1921, $82.75; for 1922, $70.73; for 1923, $72.95; for 1924, $71.50.

The evidence discloses this unique situation: In 1913 William A. Kinney and Alice V. Kinney, the owners, mortgaged lots 3 and 4 in block 64 Salt Lake City Survey to Bathsheba M. Allen. This mortgage was released April 1, 1915.

In 1917 taxes on the lots appear to have been assessed against Bathsheba M. Allen, and continuously so in so far as the record discloses until not long before the beginning of this action.

E. S. Hallock paid no taxes after 1924. The property was again sold for taxes assessed against Bathsheba M. Allen in 1925, notwithstanding E. S. Hallock's tax deed had been of record since April 4, 1922, based upon a tax sale for taxes assessed in 1917 against Bathsheba M. Allen. During the whole period W. A. Kinney or his heirs or legatee Jennie R. M. Kinney was the record owner of the fee title, and in so far as appears the lots may have been assessed and taxes paid by them.

After hearing the evidence and making findings, the trial court concluded that the tax deeds held by both plaintiff and defendant were invalid. Both parties concede the correctness of the position of the court in this regard. It is found by the court and agreed to by the parties that Jennie R. M. Kinney and her predecessors owned the fee title. Bathsheba M. Allen was at all times a stranger to the title. She died February 11, 1914. The court found and decreed the plaintiff to be the owner of the fee title subject to a lien in favor of the defendant for the sum of $54.31. This is the sum paid by Mr. James H. Grut, trustee, for the certificate of tax sale for 1917 taxes assessed against Bathsheba M. Allen upon Lots 3 and 4, Block 64, Salt Lak Cty Survey. This tax certificate was assigned to E. S. Hallock.

This appeal involves the question as to whether the trial court should also have included the further sum of $534.68 heretofore itemized and constituting the taxes paid by E. S. Hallock up to the year 1924.

In 1925 the property was again sold for non-payment of taxes assessed against Bathsheba M. Allen. No explanation is offered as to why E. S. Hallock ceased paying the taxes after 1924 or how or why the county continued to assess taxes against Bathsheba M. Allen.

We find no authorities giving to a tax sale purchaser a right to be reimbursed by the owner or subsequent tax title purchaser where the first tax sale purchaser has neglected to pay the taxes after acquiring the tax deed and has permitted the property to be subsequently sold to another for unpaid taxes whether the tax sale was void or not.

A tax sale will not be set aside for mere irregularities. Unpartitioned property assessed against one of the heirs of a deceased owner is an irregularity and is not sufficient to invalidate an assessment or prevent the attachment of a tax lien. *Oregon Short Line Railroad Co.* v. *Hallock,* 41 Utah 378, 126 P. 394.

The case of *Burton* v. *Hoover,* 93 Utah 498, 74 P. 2d 652, 654, is a typical case where there is a void tax sale and plaintiff seeks equitable relief. The tax title was held bad for failure of a definite description. Upon that point several cases are cited in the opinion. The tax deed was set aside. On the equitable side of that case it is stated

"the plaintiff has invoked the aid of the court of equity to vacate the tax deeds, he must do equity, * * * at least to the extent to which the attempted purchase by defendants has relieved his property of liens."

Plaintiff sought to quiet his title, alleging defendant claimed some interest. The following cases were cited, *Oregon Short Line Railroad Co.* v. *Hallock,* supra; *Utah Lead Co.* v. *Piute County,* 92 Utah 1, 65 P. 2d 1190; *Holland* v. *Hotchkiss,* 162 Cal. 366, 123 P. 258, L. R. A. 1915C, 492.

There cases correctly state the weight of authority and the law in this jurisdiction. In the instant case the plaintiff sought no equitable relief. The delayed answer of defendant injected the equitable feature. Neither party to this action can claim a tax lien. No valid assessment was levied against Bathsheba Allen. Whether taxes were levied, assessed or paid by the fee owner does not appear. Each of the parties hereto in so far as any claim for reimbursement is in the same position, except that the defendant fails to show he had paid anything for the benefit of plaintiff. Defendant by failing to keep alive any right he might have had, seems to have abandoned any claim under the void tax sale to him and is estopped to claim reimbursement from one who was entitled to presume defendant had abandoned any claim. In so far as tax liens may exist, if there are any, defendant's position is no better than plaintiff's when so limited. But if it be assumed the appellant had a lien, the lien was extinguished by the second tax sale when the first tax sale purchaser, the appellant, failed to keep alive whatever lien he had by payment of the taxes assessed against the property. This second tax sale purchaser, the respondent, whose tax title was as valid or as defective but not more so, is, as to the matter of the tax titles alone, equitably in the better position. The fact that the second purchaser at a subsequent time tries to strengthen his position in the absence of fraud or collusion by acquiring any other outstanding claimed title valid or otherwise should not prejudice his equitable status as between the two tax title claimants equally void as against a title holder.

In this case there is no distinction as to the validity of the assessment or sale in pursuance of the 1917 taxes and that of any of the other years. The assessment in every instance was made against a stranger to the title owner. All of the tax sales were void. It cannot be said that plaintiff was unjustly enriched or that defendant was injured. The defendant had not lost or been deprived of anything he had by virtue of his alleged purchase or tax payments before plain-

tiff acquired the fee title. When plaintiff purchased the fee title, for all that appears, it may be presumed to have been a fair bargain of sale and purchase for a good title. Had the defendant, appellant here, become the owner of the fee by purchase instead of the plaintiff and the same order of events had obtained, many cases would justify a different conclusion as reimbursement rights. Cases need not be cited. In the instant case in so far as tax matters are concerned the plaintiff is in the better position equitably and his title in fee strengthens his position.

We are compelled to leave the parties where we found them.

Judgment affirmed. Costs to respondent.

LARSON, J., concurs.

PRATT, J., concurs in the result.

McDONOUGH, Justice (dissenting).

The facts as recited in the opinion of the court reveal that the plaintiff in the action below is the owner of the premises involved, he holding the record title. The fact that he attempted to prevail by putting in evidence only his tax title, properly held invalid by the trial court, did not preclude defendant from revealing plaintiff's true position, in order to show that the former had paid taxes which inured to the benefit of the latter. True, plaintiff might show that he had a deed from the county which was good against anyone except the true owner. But the true owner was in court. The question presented, then, is whether such owner is entitled, under the recited facts, to have his title quieted on the basis of his record title against the purchaser of an invalid tax title where the latter makes claim to reimbursement, without requiring such reimbursement as a condition to granting the record owner the relief prayed for.

Respondent's first contention in support of the judgment below is that while a tax title claimant is, in a proper

case, entitled to be reimbursed as a condition precedent to declaring his tax deed invalid and quieting title in the record owner, such right to reimbursement applies only where there has been a valid tax levied on the property; that if for any reason there was no valid assessment, there was no tax due and hence no duty to pay any tax. Consequently there being no duty to pay any tax there is no duty to reimburse a tax title claimant for purchasing a void tax deed.

While there are cases so holding (See Annotation in 16 Am. & Eng. Ann. Cas. 800; *Graves* v. *Berry*, 35 Idaho 498, 207 P. 718; *State Finance Co.* v. *Myers*, 16 N. D. 193, 112 N. W. 76, note in L. R. A. 1915C, 492, 503), a number of those cited in support of such rule are cases where the land was not subject to taxation or where the owner had already paid the tax. See *Machado* v. *Canty*, 18 Cal. App. 35, 122 P. 77; *Webster* v. *Cressler*, 65 S. D. 571, 276 N. W. 263; *Lasell* v. *Yankton County*, ___ S. D. ___, 295 N. W. 283; *Maher* v. *Brown*, 183 Ill. 575, 56 N. E. 181; *Gage* v. *Kaufman*, 133 U. S. 471, 10 S. Ct. 406, 33 L. Ed. 725, 726; *West* v. *Cameron*, 39 Kan. 736, 18 P. 894.

Contra are cases to the effect that where the land is subject to taxation and the owner thereof has not paid a tax, he must reimburse the tax title claimant for moneys expended in purchasing a tax deed and for payment of subsequent taxes, at least to the extent such owner would have been required to pay the county if there had been a valid assessment. Absent any dispute as to the amount of the assessment the record owner must reimburse the tax title claimant to the full amount he has paid; but if there is a dispute as to the correct amount of the tax the record owner must nevertheless pay what the correct amount would have been. See *Savings & Loan Society* v. *Burke*, 151 Cal. 616, 91 P. 504, 505, where the court held:

"It is the law of this state, as declared in two decisions rendered since this appeal was taken, that the execution of a tax deed based on an imperfect assessment will not be restrained at the suit of one who does not offer to do equity by paying such tax as is, in morals and

justice, chargeable against him. *Couts* v. *Cornell*, 147 Cal. 560, 82 P. 194, 109 Am. St. Rep. 168; *Grant* v. *Cornell*, 147 Cal. 565, 82 P. 193, 109 Am. St. Rep. 173."

*Squires* v. *Estey*, 33 Cal. App. 287, 165 P. 34, holding:

"The main contention of the appellant is that the various items of taxes, etc., alleged to have been paid by the defendant as a prerequisite to the issuance to him of the tax deed were based upon assessments and levies of taxes by the state and by the City of Oakland which were void on account of numerous defects and irregularities as shown in the proofs and pointed out in the briefs of appellant. Conceding that such defects and irregularities exist, and that they were such as would have rendered void the tax deed issued to the defendant, and uncollectible the taxes based thereon in any proceedings initiated by the state to compel the plaintiff as the owner of the property to pay the same, or even in any proceeding initiated by the defendant to quiet his title to the property, we are still unable to distinguish this case from the case of *Holland* v. *Hotchkiss*, 162 Cal. 366, 123 P. 258, L. R. A. 1915C, 492, wherein the rule is laid down that:

" 'Where the owner comes into equity asking equitable relief to remove or cancel a tax deed or sale as a cloud upon his title, or to obtain a judgment which, in effect, will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser, or his grantee or assignee, the taxes, penalties, interest, and costs justly chargeable upon the land and which the purchaser has paid at the sale, or afterward upon the faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession.'

"It is contended, however, by the appellant that this rule has only application to cases where the assessment and levy of the taxes sought to be recovered were so far legal as to have created a lien upon the property. But the case above cited does not make this distinction in its application of the broad principle that he who seeks equity must do equity * * *."

*H. & W. Pierce, Inc.* v. *Santa Barbara County*, 40 Cal. App. 302, 180 P. 641, 643, holding:

"In actions, such as the present one, to recover taxes, as well as in actions to enjoin or set aside tax deeds, the law is that when there is a moral obligation to pay the tax it cannot be revoked on account of some technical defect rendering the assessment void."

*Weyse* v. *Biedebach,* 86 Cal. App. 712, 261 P. 1086 (where the assessment was, as in the present case, made in the wrong name) the court held that a successor in interest to the record owner must reimburse the tax title claimant. See, also, *Green* v. *Palmer,* 68 Cal. App. 393, 229 P. 876; *Elder* v. *Board of County Com'rs,* 33 Colo. 475, 81 P. 244; *Cripple Creek Trading & Mining Co.* v. *Stewart,* 100 Colo. 271, 67 P. 2d 1032; *Town of Winchester* v. *Stockwell,* 76 N. H. 193, 81 A. 526; *Douglas* v. *City of Fargo,* 13 N. D. 467, 101 N. W. 919; *Collins* v. *Reger,* 62 W. Va. 195, 57 S. E. 743 (where there was an assessment in the wrong name and the court required reimbursement); *Cook County* v. *Thornhill Wagon Co.,* 189 Ga. 360, 5 S. E. 2d 881, 882 (holding that where the taxes were in part not chargeable against the realty in question the record owner should pay to the court "the taxes actually due on this particular land, with interest and cost of sale, in accordance with the tender alleged in the petition"); *Davis* v. *Metropolitan Life Ins. Co.,* 48 Ga. App. 179, 172 S. E. 467; *Sinclair* v. *Learned,* 51 Mich. 335, 16 N. W. 672; *Dillon* v. *Merriam,* 22 Neb. 151, 34 N. W. 344, 345. Here the court held:

"The court below failed to allow the taxes assessed against said land during the year 1863, apparently upon the ground of informality in the assessment. The allegations in the petition upon that point are 'that all the proceedings of said treasurer and the defendant, Merriam, were unlawful and void and irregular in this: that said land was not assessed for taxes in the years 1863 and 1865 as required by law, and no taxes for the years 1863 and 1865 were levied thereon as required by law, and said land was not advertised for sale for the taxes of 1863 and 1865 as required by law.' It will be seen that there was no allegation that the land was not subject to taxation, but simply a claim that the taxes were not assessed as required by law. In what respect the assessment failed to comply with the law is not stated. When a party comes into a court of equity, asking relief, as a condition the court will require him to do equity before it will be granted. * * * This rule will be applied in the cancellation of tax deeds; and where the tax was a proper charge against the land, the land-owner, as a condition of canceling the tax deed, will be required to pay the tax, with lawful interest thereon."

See, also, *Browne* v. *Finaly*, 51 Neb. 465, 71 N. W. 34.

No question is in this case raised as to the land in question being subject to the levied tax; nor as to the levy and assessment being made by the proper authorities. Nor is there any contention that the owner had paid the tax. The land was properly described. It was but assessed to the wrong person. This invalidated the sale; but it did not preclude a tax lien attaching to the land. The assessment was not void in the sense that an assessment made by an unauthorized person or of non taxable property is void.

To require reimbursement in an amount equal to that which the owner would have been required to pay had the property been assessed in his name would place him in the position he would have occupied had not such error occurred. Such incorrect assessment should not, then, be grounds for denying reimbursement.

Respondent's second contention is that appellant should not be entitled to reimbursement for the amount of taxes he has paid on the premises for the reason that subsequent to the issuance of the tax deed to appellant the property again went to tax sale and was purchased in by respondent. He has cited no cases to support such theory. Nor have I found any to that effect. The theory on which reimbursement is awarded to a defeated tax title claimant is founded on the maxim that he who is seeking equity must do equity. A person who is attempting to quiet title against a tax deed is in effect attempting to have declared void a deed founded on the payment of taxes which such claimant or his predecessor in interest was obligated to pay. To permit him to avoid the payment of taxes on his property, and at the same time prevail against a person who in good faith has paid such taxes by purchase of a tax deed from the county, would work an injustice.

I see no reason why a purchaser at a tax sale should be required to continue to pay the taxes on the property or forfeit his contingent right to be reimbursed for what moneys he has already expended. The person who has the duty of

paying the taxes in the first instance (or his successor in interest) would thereby be relieved of such obligation, contrary to the policy of the law. It may very well be in instances such as presented here that the purchaser of a tax deed might discover that his tax deed is defective. In such case he would be disinclined to send good money after bad. To hold that to protect what he has paid in the way of taxes, he must continue to pay those taxes, on behalf of the real owner of the premises, as security against the day the owner may wish to regain his property or quiet title thereto, is contrary to the entire theory of reimbursement. It is only when the record owner seeks the aid of the court to cancel such tax deed or otherwise invalidate it, that as a condition to granting such relief he will be required to make the party whole for the amount he has expended to relieve the property involved from the taxes levied against it. Certainly his position is no different in relation to one who has purchased a void or voidable tax deed but permitted the property to again be sold for delinquent taxes and one who has purchased a second invalid tax deed. In both instances the property has been relieved of the taxes levied against it; and in both instances the record owner should repay the amounts expended for the tax deeds as a condition precedent to granting him relief against such tax deeds.

Certainly the rule is well established that where the record owner is seeking to quiet title against an invalid tax deed he must reimburse the tax title claimant, not only for the amount expended for his tax title but for all taxes subsequently paid on the property. See *Coughlin* v. *City of Pierre,* 66 S. D. 523, 286 N. W. 877; *McKinnon* v. *Fuller,* 33 S. D. 582, 146 N. W. 910; *McGuigan* v. *Fitzpatrick,* 60 R. I. 490, 199 A. 448; *Holland* v. *Hotchkiss,* 162 Cal. 366, 123 P. 258, L. R. A. 1915C, 492. There is no reason why a distinction should be made where one person has paid all such taxes, or where two or more persons have done so, so long as the record owner is seeking as against all such persons to as-

sert his record title and void the tax title or titles outstanding against the property.

The conclusion is, therefore, reached that where a person who has permitted property which he has purchased at tax sale to again be sold for delinquent taxes and bought in by the person who is also claiming the property by or through the record owner and the court determines that both tax titles are invalid it shall, as a condition to quieting title in the person claiming the record title, require that such person reimburse the tax title claimant for the amounts expended by him for his tax deed and for what subsequent taxes he may have paid, together with interest thereon.

That such conclusion is in harmony with the cases on this subject, see *Belz* v. *Bird*, 31 Kan. 139, 1 P. 246; *Trustees* v. *Hewitt*, 37 Kan. 107, 14 P. 540; *Wygant* v. *Dahl*, 26 Neb. 562, 42 N. W. 735.

Had the assessment and the tax proceedings subsequent thereto leading to the second tax deed been in all respects regular, then, of course, the tax payments made by appellant would not, because of his subsequent default, have inured to the benefit of the owner. The latter would then have no interest in the property. Likewise had the first tax sale been valid and the second invalid the result, as to the record owner would be the same. Proof of the invalidity of both tax sales was necessary in order for the record owner to assert his title. The tax sales merely effected a payment of the taxes for the benefit of the owner of the land.

The case should be remanded to the lower court for modification of the decree in such manner as to require full reimbursement to appellant.

WOLFE, J., concurs in the views expressed in the dissenting opinion of McDONOUGH, J.