# NORTHCREST, Inc. v. WALKER BANK & TRUST CO. et al.

No. 7735. Decided September 29, 1952. (248 P. 2d 692.)

See publication Words and Phrases, for other judicial constructions and definitions of "Clear and Convincing."

See 31 C. J. S., Estoppel, sec. 133. Rights or interests covered by quitclaim deed. 16 Am. Jur., Deeds, secs. 330 et seq.; 162 A. L. R. 556.

*Thomas & Armstrong, H. P. Thomas,* Salt Lake City, for appellant.

*Ray R. Christensen,* Salt Lake City, for respondents.

CROCKETT, Justice.

Northcrest, Inc., sued to quiet title to two adjoining tracts of land located along the foothills above the bench northeast of Salt Lake City, Utah. It claimed title through a deed from Hugh L. Thomas, Jr. The trial court found that the deed by which Hugh, Jr., purported to take the property

from his mother, Lucie R. Thomas, was a forgery; quieted title in plaintiff to only one-third of it as grantee of Hugh, Jr., and awarded the other two-thirds to the defendants, John L. Thomas and Gertrude Thomas Gardner, as the other surviving heirs of Lucie R. Thomas, Plaintiff appeals, claiming all of the property.

Three separate chains of title are relied upon by plaintiff in support of its pretention to ownership: First, through the above-mentioned deed from Hugh L. Thomas, Jr.; second, through a quitclaim deed from the Utah Savings & Trust Company; third, through another quitclaim, a source we shall call the "Hempstead title".

Undisputed is the plaintiff's contention that one who asserts the invalidity of a deed must so prove by clear and convincing evidence. *Thornley Land & Livestock Co.* v. *Gailey*, 105 Utah 519, 143 P. 2d 283; *Corey* v. *Roberts*, 82 Utah 445, 25 P. 2d 940. The trial court ■ found that defendants had met this burden in regard to all three of the aforementioned deeds. In appraising the sufficiency of the evidence, it is necessary to set forth the facts and also to discuss errors assigned respecting each of the asserted sources of title.

All three of the titles mentioned stem from a common source: Mrs. Lucie R. Thomas, the mother of John, Gertrude and Hugh L. Thomas, Jr. The mother Lucie died in 1947 and the present dispute arises concerning certain transactions and conduct respecting the property occurring during her lifetime.

Northcrest first purportedly bought the property from Hugh, Jr. He gave them a warranty deed dated January 11, 1948. They were to pay him $2,500; $1,800 was paid in cash, and $700 was withheld to clear up certain defects or clouds on the title (the other two chains of title now relied upon by plaintiff). When the brother and sister, John and Gertrude, learned of this, and that Hugh claimed that their mother had deeded to him before she died, they

challenged the validity of the deed to Hugh, and plaintiff's title.

As above set out, the trial court found that a purported deed from Lucie (the mother) to Hugh, Jr., bearing date of September 16, 1947 was a forgery. Plaintiff maintains that there is not sufficient evidence to support such a finding.

Defendants' evidence that this deed was forged rests upon three separate bases: (a) Expert testimony that the signature on the deed was not that of Lucie R. Thomas; (b) The testimony of the notary that Lucie R. Thomas did not personally appear before her or otherwise acknowledge the deed; and (c) evidence that the mother Lucie was not in the State of Utah at or near the time the acknowledgment was made in Salt Lake City.

As to (a) above mentioned, plaintiff now concedes that the signature on the deed was not in handwriting of Lucie R. Thomas. It postulates, however, that because of the acknowledgment and recordation, it must be assumed that she adopted or ratified the signature as her own, and that there is not sufficient competent evidence to disprove the conveyance. It is true that such acknowledgment and recordation give rise to a presumption of the genuineness and the due execution and delivery of the deed and is prima facie evidence thereof. *Thomas* v. *Peterson,* 213 Cal. 672, 3 P. 2d 306, and see Sec. 104-48-12, U. C. A. 1943. This presumption should not be regarded lightly but should be given great weight. The authorities generally hold that the effect of such certificate of acknowledgment will not be overthrown upon a mere preponderance of the evidence, but it must be clear and convincing. 1 C. J. S., Acknowledgments, § 141, page 901; 1 Am. Jur. 380, Acknowledgments, Sec. 155.

Plaintiff assigns as error the court's action in permitting the notary, Marguerite Clayton, to testify over plaintiff's

objection that Lucie R. Thomas did not in fact appear before her but that she executed the acknowledgment because she "thought it looked like her signature". There are indeed some authorities which hold that a notary should not be permitted to dispute his certificate. These are usually based on situations where the person purporting to execute the deed actually appeared before the notary public, but due to physical infirmity, mental incapacity, or failure to follow the forms prescribed by law did not accomplish a valid acknowledgment. But we are not here concerned with such circumstances. Many authorities hold that where a party did not in fact appear before the notary, nor otherwise acknowledge the deed before him that the notary may testify to such facts in impeachment of his certificate. 1 C. J. S., Acknowledgments, § 139, page 900; *People's Gas Co.* v. *Fletcher*, 81 Kan. 76, 105 P. 24, 41 L. R. A., N. S., 1170 and 1171.

1 Am. Jur. 380, Acknowledgments, Sec. 154, states:

"* * * The trend of authority, however, is in favor of admitting any evidence that may have a tendency to prove the truth, and a more liberal rule permits the officer to be called as a witness and compelled under oath to state the true facts of the transaction so far as he can remember them, whether he acted under mistake, misapprehension, or in collusion with the party to be benefited by taking the acknowledgement * * *."

Among numerous cases affirming this rule are: *Qualls* v. *Qualls*, 196 Ala. 524, 72 So. 76; *Effenberger* v. *Durant*, 57 Okl. 445, 156 P. 212; *Campbell* v. *Campbell*, 146 Wash. 478, 263 P. 957, 958. Wigmore in his work on Evidence, Vol. II, 3rd Ed., Sec. 530, in discussing this problem concludes that there is really no basis for excluding the notary's testimony merely because it contradicts his previous certificate. He says:

"* * * The notion has no better grounds for support here than elsewhere. If the certificate is not absolutely conclusive and may be otherwise shown to be incorrect, then the official should be equally competent. The official doubtless should be punished, but not the

party needing his testimony. The official is clearly capable of falsification, but the value of his testimony should be left to the jury."

We are in accord with the foregoing rule as better serving the purpose of getting at the truth and doing justice between the parties.

Plaintiff also argues that the notary's testimony is not entitled to persuasive weight, because her prior certificate weighed against it, nullifies her testimony ■ and renders it valueless. The credit to be given her testimony was for the trier of the facts. As stated in *Campbell* v. *Campbell*, supra:

"* * * It would seem necessarily to follow, therefore, that the person wronged by such an act should not be deprived of any testimony which would tend to correct the wrong, and it can be that the testimony of the officer taking the acknowledgment would be the most persuasive testimony that could be produced upon the fact. The weight that is to be given to his testimony will of course depend upon the circumstances, but the triers of the fact in such an instance, as in all other instances of controverted fact, must be relied upon to give to the testimony its due weight. * * *"

and see also *Camp* v. *Carpenter*, 52 Mich. 375, 18 N. W. 113, 115, to the same effect and in which the court also said:

"* * * It would be * * * absurd to allow a certificate such weight as is claimed for it here, when the notary himself contradicts his own statements, and shows its want of truth. * * *"

In addition to the evidence of the notary, and that the signature was not Lucie's, there is evidence that Lucie R. Thomas was not in or near Salt Lake but was in Kentucky or Florida when the deed was supposedly ■ made. There is no doubt that the proof was sufficient to support the court's finding that the deed was a forgery. This destroys the presumption of validity based on acknowledgment and recordation.

The second chain of title through which plaintiff claims, is its quitclaim deed from the Utah Savings & Trust Company. In 1914, Lucie R. Thomas and her husband, Hugh, Sr., had given that bank a warranty deed to this property. The trial court concluded that this deed was actually a mortgage given as security for a loan which had been paid. Defendants' contention is that the evidence is not sufficient to meet the "clear and convincing" burden of proof which rests upon one seeking to prove that a deed is a mortgage. Defendants called as a witness Mr. E. R. McGee from the bank, who produced its records, made at the time of the transaction, and revealed their contents. They showed that Lucie R. Thomas and her husband, Hugh, Sr., had given the bank, as security for a loan, a warranty deed to part of Sec. 29, T. 1, N., R. 1 E., S. L. M. (wherein this property lies) and that the loan had been repaid. The loan was made on the same date and the consideration named in the deed was $1,400, the same amount as the loan. It was further proved that no other deed from Lucie Thomas to the bank covering lands in said Sec. 29 had even been recorded. These circumstances seem to practically remove any uncertainty which may have existed that the warranty deed referred to was one given as security for the loan. The officials of the bank so considered it.

Willard R. Smith, Treasurer of Northcrest, who conducted the negotiations for purchase of the land from Hugh, Jr., conceded that the plaintiff gave nothing for the quitclaim deed from Utah Savings; its officials advised him that they claimed no interest in the property and willingly gave the quitclaim for the purpose of clearing up the cloud upon the title which plaintiff was attempting to accomplish in connection with his purchase of the property from Hugh Thomas, Jr.

The plaintiff assails this evidence as incompetent and insufficient upon several grounds: First, that the evidence of Mr. McGee and the bank's records were improperly

admitted in evidence. True it is that Mr. McGee was not associated with the bank until some years after the transaction took place and that he had no first-hand knowledge of it. This did not disqualify him from testifying. He was familiar with the records of the bank made concurrent with the transaction and was competent to identify them and their contents. *State* v. *Davie,* 121 Utah 184, 240 P. 2d 263, and 265.

Plaintiff next seeks to invoke against the evidence of Mr. McGee and the bank records the rule which renders inadmissible statements of a grantor made in derogation of his title after he has parted with it. See 1 A. L. R. 1240. However, if the statement is made while the grantor is owner of the land, or sustains some interest in it, then the objection does not obtain, and such statements are uniformly held to be admissible, IV Wigmore on Evidence, 3rd Ed., Section 1082, page 150 et seq.; 20 Am. Jur., Evidence, page 518, Sec. 605. The notations on the loan records of the bank are analogous to a statement or declaration as to what its interest was at the time such record was made, and are properly brought to light by the witness McGee who could identify the records. It is very little different than if documentary evidence of like character had been made and left with a third party and produced at the trial.

Plaintiff maintains further that whether an instrument is a deed or mortgage is a matter of the intention of the parties, and that it must appear not only that one but both parties regarded it as a mortgage before it is such legally. There is no doubt that this is so, 36 Am. Jur., Mortgages, Sec. 132.

The fact is that the Utah Savings never paid any taxes on the property, nor did any other act consistent with its ownership; while on the contrary, Mrs. Thomas did continue to act consistently with ownership as hereinafter discussed in connection with plaintiff's claim of ownership under the alleged "Hempstead title."

There is not much force or consistency to the argument that, in spite of all of the foregoing facts showing the intention of the bank to treat the deed as a mortgage, there is no proof of an intention on the part of the grantor that it was such. It would be contrary to human experience for the grantee to admit that the transaction was only as security, but for the grantor, against her own interest, to intend that the deed was an absolute conveyance. This is particularly true where all of the conduct of the grantor thereafter was consistent only with the intent that the deed be a mortgage. From the foregoing, it is clear that the trial court had evidence which it could regard as clear and convincing that the deed to the Utah Savings & Trust Company was given as a mortgage to secure a loan and there is no dispute about the fact that the loan was repaid.

This brings us to a consideration of the "Hempstead title" by which, in the alternative, the plaintiff claims that if it is not entitled to the whole tract it at least owns the West 40 acres (less 20x30 rods). Again, defendants are met with the necessity of overcoming the presumptions in favor of a deed because of its acknowledgment and recordation. Under the evidence in this case, this alone would have been sufficient to support the trial court had he found in favor of the deed. Having found to the contrary, the question for us to consider is: Is the evidence such that we must say as a matter of law that no reasonable mind could believe it was clear and convincing to the effect that Lucie R. Thomas did not convey the property by this deed?

In summary, the facts pertinent to this issue and upon which the court based its determination that no such conveyance was made are as follows: The abstract shows a deed dated in 1908 from Lucie R. Thomas to H. H. Hempstead of San Francisco, California. There is no indication that Hempstead ever exercised any dominion or right of ownership in the property, or in fact that he ever did any-

thing respecting it. Even the recordation of the deed was at the request of the grantor. On the other hand, everything the record does reveal shows that Lucie R. Thomas continued to act as owner of the land and did things which are only consistent with her ownership. Most important of these is the fact that so long as she lived (until 1947), Lucie R. Thomas paid the taxes or redeemed them for every year with one single exception. In 1912, one Spencer Clawson purchased the tax deed from the County for taxes which had gone delinquent in 1907. In 1915, Mrs. Thomas purchased the tax title from Clawson who quitclaimed the property back to her. On January 15, 1917, the property was redeemed from tax sale for Lucie R. Thomas by Hugh L. Thomas (her husband) for $188.40. It is not disputed that after 1915 the property was assessed to Lucie R. Thomas and that she paid or redeemed the taxes each year until her death in 1947. Even though it is true that payment of taxes is presumed to be for the benefit of the owner, this tax record seems impossible to reconcile with ownership in Hempstead. Also, a water appropriation for this land was approved for Lucie R. Thomas in 1909 and the certificate was issued to her in 1918. Further, Mrs. Thomas in 1910 executed a warranty deed to this property to Tracy Loan & Trust Company as security for a loan, which company subsequently reconveyed the property back to her; and as found by the trial court she also gave a warranty deed to the Utah Savings & Trust Company in 1914, intended as a mortgage as hereinabove discussed in reference to what we have called the second chain of title. The fact that these two banking institutions made loans to her on the strength of her title has additional probative value that she had not divested herself of ownership by the Hempstead deed which was given several years before.

It is obvious, of course, that the plaintiff is not in the position of a bona fide purchaser for value who relied on the validity of this Hempstead deed. *Pender* v. *Bird,* 119

Utah 91, 224 P. 2d 1057. The facts concerning the conveyance by the County to Clawson, his conveyance to Lucie R. Thomas, and her payment and redemption of the taxes, in addition to other facts referred to in this opinion, are matters of public record and are disclosed by the abstract. Northcrest stands in no better position than would Hempstead, were he asserting title. Under the circumstances disclosed here, where Hempstead did nothing whatsoever to indicate claim of ownership in or to protect the property, but stood by and let the taxes go delinquent, permitted Lucie R. Thomas to purchase the outstanding tax title from Clawson, redeem it from additional county taxes for $188, and continue to pay the taxes from 1915 to 1947, a period of 32 years, it would be unconscionable to now allow Hempstead or his successor, Northcrest, to assert title and have the property. See *Larkin* v. *Bank of America, etc.,* 93 Cal. App. 2d 594, 209 P. 2d 801. (There other facts also existed.) And the trial court properly refused to do so. This is so, a fortiorari, because Northcrest has not offered to repay to defendants the sums paid by their mother for taxes and redemptions to protect the property from forfeiture to the County.

It is noteworthy that the plaintiff itself regarded the Hempstead deed as merely a cloud on the title. It commenced an action against Hempstead's surviving widow so alleging, and claiming title in itself on the basis of the first and second chains of title hereinabove referred to. While the present action was pending, they located Mrs. Hempstead in California and procured from her a quitclaim deed for the nominal consideration of $25. Thereafter, they filed an amended complaint in that action naming as an additional defendant Arthur P. Lakin whom they had caused to be appointed as administrator of the estate of Hempstead. If Hempstead had had a valid claim, it would have been the duty of this Northcrest appointed administrator to so assert and defend on behalf of Hempstead's estate. Their administrator stated no defense but defaulted and permitted

Northcrest to take judgment without controversy. It cannot be questioned that Northcrest regarded the outstanding Hempstead deed as merely a cloud to be removed from the title and they did not consider that there was any serious likelihood of such title being valid until it became apparent that the deed from Hugh, Jr., was a forgery; they then went out and bought this Hempstead title and attempted to rely on it also.

Admittedly, the last mentioned subject is not controlling. The title could have been good even if the parties themselves did not so regard it. It is also true that some of the foregoing facts can be reconciled with conveyance of the property to, and ownership in Hempstead. It may also be said that if Lucie had actually conveyed by warranty deed, her acts in paying taxes and protecting title to the property would inure to the benefit of the grantee to whom she had warranted. However, all of the facts shown, taken together, can most reasonably be interpreted as indicating that she did not actually convey to Hempstead; but the deed was for some other purpose.

For evidence to be clear and convincing it must be such that there is no serious or substantial doubt as to the correctness of the conclusion. *Greener* v. *Greener*, 116 Utah 571, 212 P. 2d 194. The evidence so satisfied the mind of the trial court. His finding should not be disturbed unless we must say that no one could reasonably find the evidence to be clear and convincing. This does not appear to be the case. On the contrary, the circumstances are persuasive that the trial court was right in his conclusion that Lucie never actually conveyed ownership of the property to Hempstead. Accordingly, the judgment is affirmed. Costs to respondents.

WOLFE, C. J., and WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice (concurring and dissenting).

I concur in the result as to the deed claimed to be a forgery and as to the deed claimed to be a mortgage. As to the so-called "Hempstead" deed, I dissent, and believe that title to the so-called "West 40" acres should be quieted in plaintiff. It respectfully is suggested by the writer that the reasons assigned by the main opinion as to the "Hempstead" deed, do not justify the conclusion that there was no conveyance to Hempstead. A valid warranty deed was executed and placed on public record. There is no evidence that it was never delivered, and the presumption that a recorded deed was delivered establishes that fact. The main opinion states as a factor in arriving at its conclusion, that there was no evidence that Hempstead exercised any dominion over the property. That is no reason for declaring a recorded deed as something other than it appears to be, to wit, no deed at all. It is pointed out that there was also no evidence that Hempstead did *not* exercise any dominion over the property. Here again, a presumption establishes that he *did* exercise dominion over the property, since it is presumed that the record owner has possession and all other muniments of title, including complete control thereof. The fact that the grantor recorded the deed pointed out in the majority opinion as some evidence to destroy the sanctity of a recorded instrument can prove absolutely nothing as to execution and delivery of the deed or ownership of the property, and again the presumption of ownership operates in favor of Hempstead. The facts that Mrs. Thomas paid the taxes for many years, or that her husband redeemed the property from tax sale in her name, or that the property was assessed in her name, have no bearing on the question of title or ownership, since this court has already stated that another presumption operates in favor of Hempstead,—that it is presumed that taxes are paid for the benefit of the record owner, irrespective of the personality of the payor.[1] That Mrs. Thomas subsequently

---

[1] *Anson* v. *Ellison*, 104 Utah 576, 140 P. 2d 653.

purchased the property from one who had acquired it by tax deed, has no significance in this case, since, having given Hempstead a warranty deed, and the taxes being delinquent, any title acquired subsequently by her inured to the benefit of and became vested in Hempstead by virtue of the fundamental principle that a warranty deed passes after-acquired title.[2] The same reasoning applies to Mrs. Thomas' ultimate perfection of a water application which would not only pass by virtue of the warranty, but which even should not be considered in this case, since it would not appear in an abstract of title, and is therefore undiscoverable as a practical matter, and whose perfection under any conceivable theory, could not possibly affect the fee title. The fact that Mrs. Thomas attempted to convey to Tracy and again to Utah Savings after her deed to Hempstead, mentioned in the main opinion, has no significance, since such attempted transfers, as against an unattacked, recorded prior deed, amount only to interloper transactions.

The majority opinion says in effect that these circumstances, in the aggregate, make it

"unconscionable [in the highest degree] to now allow Hempstead *or his successor*, Northcrest, to assert title and have the property."

The quoted language sounds like a defense in equity based on unconscionability, but such defense was not asserted by defendants, who claimed only by adverse possession or that there never had been a conveyance to Hempstead, which latter fact the trial court found, and upon which the award to defendants was based. The quoted language is, in truth, a gratuity indulged by the main opinion in aid of but not the basis for, the decree, and the inconsistency of the quoted language quickly is pointed up when later in the opinion it is admitted that

"the trial court was right in his conclusion *that Lucie never actually conveyed ownership of the property to Hempstead.*" (Emphasis added.)

---

[2]Thompson on Real Property, Perm. Ed., § 2610.

The main opinion also makes the point that plaintiff never offered to "repay to defendants the sums paid by their mother for taxes and redemptions". There was no duty to make such offer, since, if title had been quieted in plaintiff, the repayment of such taxes and redemptions would have been required as a matter of course, as held by the decisions of this court.[3]

The writer believes that it was not

"noteworthy that the plaintiff itself regarded the Hempstead deed as merely a cloud on the title",

as stated in the majority opinion. What the plaintiff thinks about a public record can have no impact on the record itself. The fact that the plaintiffs obtained a deed from the widow of the record owner for $25, and amended its complaint to include Hempstead's administrator as a defendant, as pointed out in the opinion, has no probative value in attacking a public record which is presumed to be correct until overcome by most persuasive evidence showing fraud, mistake and the like by clear and unmistakable evidence.

The writer respectfully suggests that as to the "West 40", the main opinion admits every rule and principle mentioned in this dissent, only to make an exception to and qualify each by gratuitous language amounting to an opinion on facts dehors the record that binds us.

---

[3]*Oregon Short Line R. Co.* v. *Hallock,* 41 Utah 378, 126 P. 394; *Bolognese* v. *Anderson,* 87 Utah 455, 49 P. 2d 1034.