HURFORD *et al.* v. NORVALL, *et al.*

No. 3310.   Opinion Filed October 14, 1913.

(135 Pac. 1060.)

1.  **BROKERS—Liability to Purchaser—Return of Money—Liability
    to Principal.** H. & J., claiming to act as agents for S., made a
    written contract with N. to sell him certain lands, alleged to be-
    long to S., and received from N. $100 of the purchase price. It
    developed that S. was not the owner of all the lands embraced
    in the contract and had given H. & J. no authority to claim that
    he was such owner, nor to sell the lands agreed to be sold. These
    facts were at once communicated by S. to both N. and H. & J.
    Held that, under the situation presented, H. & J. were liable to
    N. for a return of the money, notwithstanding their claim of
    having acted as agents, and N.'s knowledge thereof, because
    their action was without valid authority, and they were not an-
    swerable to their alleged principal for the money.

2.  **VENDOR AND PURCHASER—Contract of Sale—Right to Re-
    scind—Deficiency in Quantity.** When a person enters into a writ-
    ten contract to buy certain definitely described lands for a definite
    price for the entire area, he is under no legal obligation to ac-
    cept a materially less quantity of land than that agreed to be
    sold him.

3.  **BROKERS—Acts of Agent—Liability of Principal to Purchaser.**
    Where brokers, without authority from their principal, contracted
    to sell more land than the principal owned and the principal
    promptly repudiated the contract and received no part of such
    money, he was not liable to the purchaser for purchase money
    received by the brokers.

4.  **SET-OFF AND COUNTERCLAIM—Right of Action of Defendant
    —Money Paid.** In a purchaser's action against real estate brokers
    for purchase money paid for land which proved deficient in quan-
    tity, the brokers were not entitled to offset a sum paid by them
    to an occupant of the premises in order to place themselves in
    position to deliver possession to plaintiff, where such payment
    was made, not for plaintiff's benefit, but to secure the profit they
    expected to make on the transaction.

(Syllabus by Brewer, C.)

*Error from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

Action by F. S. Norvall against A. H. Hurford and Roy
Jenkins, partners, doing business as Hurford & Jenkins, and

another.   Judgment for plaintiff and the defendant not named, and the defendants named bring error.   Affirmed.

*Lydick & Eggerman,* for plaintiffs in error.

*Stanard, Wahl & Ennis,* for defendants in error.

Opinion by BREWER, C.  F. S. Norvall brought suit in a justice of the peace court against Hurford & Jenkins, a real estate firm, and Green M. Stewart, for $100.  The case was taken on appeal to the county court and was transferred from there to the superior court of Pottawatomie county, where a trial resulted in a judgment for the amount claimed against Hurford & Jenkins; Stewart being held not liable.  At the conclusion of the evidence the court instructed the jury to find for plaintiff as against Hurford & Jenkins and to find for the defendant Stewart.

The facts out of which this controversy arose are as follows:  Plaintiff, Norvall, moved to Shawnee and wanted to buy a home.   He went to Hurford & Jenkins, who were in the real estate business, and they showed him a place in the suburbs of Shawnee which suited him and they entered into a contract of sale of the land.   A tract of land had been laid off into five-acre blocks, not being subdivided into lots.   The contract in writing executed between the parties provided that the plaintiff was to get the N. ½ of lot 19 and the S. 200 feet of lot 20, for which he was to pay the sum of $2,300.   Upon the execution of the contract the plaintiff paid thereon the sum of $100.   The defendants Hurford & Jenkins did not claim to own the land, but claimed that it belonged to Stewart, and that as agents they had authority to sell it.   At the price agreed upon they stood to make $300.   There was a woman occupying the house on the land, and Hurford & Jenkins paid her $54 for some garden and feed stuff, and some claim of the right to possession, so as to enable them to be prepared to give possession to Norvall when the trade was finally consummated.   After making the contract, it developed that Stewart was not the owner of all the land embraced in the contract of sale, although he was owner of a por-

tion of it. It also developed that, in listing the property with Hurford & Jenkins, Stewart had made no claim to own all this land, and of course had not authorized them to sell all that they had attempted to sell. The difference between what Stewart actually owned, and what these agents contracted to sell, appears from the record to have amounted to something more than an acre of land. Upon ascertaining the true state of affairs, Norvall declined to accept the smaller quantity of land for that which he contracted to buy, and demanded a return of the $100 he had paid. The return being refused, this suit was brought and resulted as has been stated.

We think the court had the correct view of the case, and decided it properly. There is no dispute but that the written contract provided that plaintiff was to have certain definitely described lands, nor is it disputed but that the person defendants claimed to be acting for was not the owner of a very considerable area of the land that Norvall was to get, and that he had not represented himself to be the owner, nor had he authorized the defendants to sell all of the land that they had attempted to sell. We know of no law, and have been cited to none, that would require Norvall to accept a materially less quantity of land than he had bought, and, when it became confessedly impossible for the defendants to carry out the contract they had made with plaintiff, it was their duty to return him the money he had paid them.

But it is complained here that the court was not only wrong in holding defendants Hurford & Jenkins liable, but that it was also wrong in holding their codefendant Stewart not liable. Not so. The defendant Stewart was not liable, for the prime reason that he had never authorized these parties to sell all the land which they had contracted in his name to sell. A suit for specific performance could not have been maintained against Stewart on this contract. He never received any part of the $100, but, on the contrary, repudiated the contract, advising both the agents and the plaintiff thereof, and that he did not own the land, had not authorized the agents to sell it, and was without power to convey it. There was no reason why he should be held liable.

The whole trouble arose through the want of care and negligence of Hurford & Jenkins, the defendants. It was their duty to know what they had to sell.

Another point is contended for by the planitiffs in error, and that is that the court erred in withdrawing from the jury, and in not considering, certain evidence that defendants had expended $54 in putting themselves in position so that they could deliver possession of the premises. They claim that this was for the benefit of Norvall and that they ought to be allowed this sum as an offset against the $100.

We think this proposition is not sound. It is not contended that Norvall was to pay anything additional to get possession, other than his written contract provided; nor is it contended that Norvall agreed to pay anything therefor. It is clear, upon the contrary, from the record that these agents had $300 prospective profit, if it went through, and it could not go through unless they were able to deliver possession; that the lady who was in possession made some claim of a right to remain, and they paid her this sum of money to get her out of the way, and to enable themselves to reap the profits of the transaction; and from this record it is reasonably probable that but for their own negligence they would have been enabled to do so.

The plaintiffs in error raise a further point. That is, that Hurford & Jenkins were merely acting as agents, and that Norvall was aware of this fact; that, when he paid the $100 it was in fact a payment to the principal, and that an action would not lie against them for the money, inasmuch as they would be answerable to the principal for it. This point is discussed at some length, with citation of authorities to support the doctrine that:

"Where an agent receives money from a third person for his principal under such circumstances that it could be recovered from the principal, the agent's liability therefor depends upon the facts and circumstances of the particular case; as whether or not he has paid it over before or after notice not to do so; whether he has changed his legal position before notice; whether he has disclosed his agency; whether it has been given to him voluntarily, or by extortion or fraud; or whether the contingencies or conditions upon which it is to be paid over have

happened or have been performed. But where the agent is known as such to the third person, and he receives the money from such person in pursuance of a valid authority, without any fraud, duress, or mistake, he is not liable to such person in an action to recover it back, although he has not paid it over to his principal. In such case an agent is answerable only to his principal and the third person must sue the principal, to recover back the money. *Gulf City Const. Co. v. L. & N. R. Co.,* 121 Ala. 621 [25 South. 579]; *Huffman v. Newman,* 55 Neb. 713 [76 N. W. 409]; *Stephens v. Bacon,* 7 N. J. Law 1."

But it is obvious that the law contended for is not applicable to the facts. The reasons are plain. The agents were not acting under any valid authority from their principal when making the contract they did; nor were they answerable to their principal for the payment, for the very simple reason that they had exceeded their authority and had contracted that the principal should do something that he had not authorized them to agree that he would do, and which in fact he could not do.

The case should be affirmed.

By the Court: It is so ordered.