ANSON v. ELLISON et al.

No. 6491.   Decided August 5, 1943.   (140 P. 2d 653.)

See 61 C. J. Taxation, sec. 1948; 26 R. C. L. 418 (8 Perm. Supp. 5772).

*White, Wright & Arnovitz* of Salt Lake City, for appelant.

*E. R. Christensen, A. Pratt Kesler,* and *Homer Holmgren,* all of Salt Lake City,, for respondents.

WOLFE, Chief Justice.

Appeal from a judgment of no cause of action.

In consideration of the sum of $275.58, Salt Lake County, on June 7, 1939, issued a quit-claim deed to Ruth Anson, plaintiff and appellant in this case. This deed recited:

"Salt Lake County * * * grantor, hereby Quit Claims to Ruth Anson, Grantee for the sum of Two Hundred Seventy-five and 58/100 ($275.58) Dollars the following described tract of land in Salt Lake County, State of Utah: Lots 53 to 56 Liberty Park Add.

"This deed is made under authority of Title 80, Chapter 10, Section 68, of the Revised Laws of Utah 1933 and as amended by Chapter 62 of Session Laws of 1933, and in pursuance of an order of the Board of County Commissioners of Said Salt Lake County, made the 7th day of June, 1939, vesting in the purchaser all of the title of the state, county, and each city, town, school or other taxing district interested in said real estate because of title passing under the tax sales of the year 1934, 1935, 1936, 1937, and 1938, and no other.

"Witness the hand of said grantor, this 7th day of June, 1939.

"Salt Lake County
"A County of the State of Utah
"By William J. Korth,
"County Clerk of Salt Lake County."

Upon the receipt of this deed the appellant, hereafter called plaintiff, instituted this action to quiet title to the property described in the deed. Record title was in the name of Nina E. Ellison, a resident of California who had died prior to the date of the issuance of this quitclaim deed. An attempt was made to serve her administrator in California and the several heirs, but the court held that proof of service was not made in the manner required by 104-5-15, R. S. U. 1933, and that therefore these parties were not before the court. This holding is not questioned on this appeal. One L. W. Emmertson who had been appointed ancillary administrator for the estate of Nina E. Ellison in Utah was served. Salt Lake City was made a party defendant for the reason that it claimed an interest in the property under and by virtue

of the levy of a special assessment which it claimed constituted a lien on this property.

The complaint alleged ownership in the plaintiff, but did not allege the source from which said ownership was obtained. Emmertson, as administrator for the estate of Nina E. Ellison, defaulted. Salt Lake City answered denying the plaintiff's ownership and setting up its claimed lien on the property for special paving assessments. It should be noted that Salt Lake did not ask for any affirmative relief, but merely prayed that the complaint be dismissed. In reply the plaintiff alleged that she had obtained title to this property by virtue of the quitclaim deed set out above and that the property conveyed to her by this deed came free from any lien claimed by Salt Lake City. Plaintiff also offered to quit-claim her interest to the city or any other defendant who would pay to her the sum she paid for the quitclaim deed together with interest, costs and expenses. The case proceeded to trial on the issues thus raised.

The plaintiff introduced in evidence as an exhibit the quit-claim deed from the County. She also obtained a stipulation from Salt Lake City that a certificate of sale had been issued on this property. Upon this showing she rested her case. After the City had offered evidence designed to show various defects in the plaintiff's tax title, the court entered a judgment of no cause of action. Whereupon the plaintiff prosecuted this appeal.

But two questions are necessary to a determination of this appeal: (1) Was plaintiff's proof sufficient to show that she had acquired a valid tax title; and (2) if not, did she nevertheless acquire by this deed a lien on the property which she could foreclose in this proceeding?

Both of these questions must be answered in the negative. It has long been held in this jurisdiction that one who relies on a tax title must show that all of the requirements of the law were complied with in the issuance of that tax title. *Asper* v. *Moon*, 24 Utah 241, 67 P. 409; *Bean* v. *Fairbanks*, 46 Utah 513, 151 P. 338; *Bolognese* v. *Anderson*, 87 Utah 450, 44 P. 2d 706.

The plaintiff apparently proceeded on the theory that the stipulation that a certificate of sale had been issued would be prima facie evidence of the regularity of all proceedings up to the issuance of said certificate. 80-10-35, U. C. A. 1943, which was in effect at the time of the trial, provides that a duly certified "copy of the record of any tax sale" is

"prima facie evidence of the facts therein shown, and the regularity of all proceedings connected with the assessment, valuation, notice, equalization, levies, tax notices, advertisement and sale of property therein described, and the burden of showing any irregularity in any of the proceedings resulting in the sale of property for the nonpayment of delinquent taxes shall be on him who asserts it."

It is doubtful that the stipulation that a certificate of sale was issued without stating by whom or to whom issued, whether it was duly certified, etc., would be the equivalent of introducing in evidence a certified copy of the tax sale record. And even if the stipulation were sufficient to show, prima facie, the regularity of all proceedings up to the issuance of the tax sale certificate, plaintiff has still failed in her proof for she has not made any showing as to the subsequent proceedings.

Plaintiff contends that the quitclaim deed from the county was prima facie evidence that all proceedings subsequent to the issuance of the certificate of sale were regular. But there is no statute giving it this effect. 80-10-66, R. S. U. 1933, prior to the 1939 amendment (L. '39, Ch. 101) provided that the deed issued by the county auditor at the end of the four-year redemption period, would, when duly executed and delivered, be prima facie evidence of the facts recited therein. But the deed relied upon by the plaintiff is clearly not the deed referred to by 80-10-66. In fact, this deed from the county specifically recites that it was issued pursuant to the authority granted by 80-10-68. It was issued prior to the effective date of the 1939 amendment to 80-10-68 (L. '39, Ch. 101) which amendment authorized the issuance of a

new form of tax deed and made this new tax deed prima facie evidence of the regularity of all proceedings subsequent to the preliminary sale. See 80-10-68 (5), U. C. A. 1943. The deed introduced by the plaintiff was a quitclaim deed. It was not the deed authorized by 80-10-68 as amended in 1939, nor did it purport to be for this amendment did not take effect until some three months after the deed was issued to the plaintiff. The deed introduced by the plaintiff is not prima facie evidence of the regularity of the proceedings subsequent to the issuance of the certificate of sale. Many of the proceedings between the preliminary sale and the issuance of a quitclaim deed from the county after the May sale are of vital importance. The plaintiff's proof failed to show any of these subsequent steps. In the light of such failure in proof we must hold that plaintiff did not make out a prima facie case of title in herself. It thus becomes unnecessary to discuss the claimed defects in title which were put in issue by the defendant's proof.

The plaintiff's second contention is that even if by the purchase of the tax deed she did not acquire a valid tax title, she nevertheless has a lien which she can foreclose in this proceeding. Plaintiff's argument in this regard is briefly: That 80-10-3, U. C. A. 1943, makes "Every tax upon real property" a lien "against the property assessed." That this lien according to the holding of this court in *Fisher* v. *Wright*, 101 Utah 469, 123 P. 2d 703, is extinguished or merged with legal title in event there is a valid sale of this property to the county, but that in event the sale to the County is invalid the County still has a lien which it could foreclose. Plaintiff contends that 80-10-1, which provides that:

"Every tax has the effect of a judgment against the person and every lien created by this title has the force and effect of an execution duly levied against all personal property of the delinquent. The judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof."

refers only to the removal of the lien on "personal" property. Thus she contends, there is no provision in the statute providing for the removal of the lien which by virtue of 80-10-3 attaches to real property. This latter lien, she argues, remains until a valid sale is made to the county or until it is foreclosed. Plaintiff then concludes that the County still had a lien at the time the quitclaim deed was delivered to her; that this quitclaim deed assigned the County's lien to her; and that she can foreclose this lien which had been given by statute to the County. This appears from her contention that she was "entitled to have her lien established on the property and the property sold to satisfy the lien and all proceeds in excess of the amount necessary to satisfy the lien" distributed to the defendants who establish their claims.

In this the plaintiff is in error. We seriously doubt in any event that the plaintiff could turn this action to quiet title into an action to foreclose a lien, but we lay aside this procedural question and turn to the merits of plaintiff's argument. As already pointed out, it is doubtful that the stipulation that a certificate of sale had been issued is sufficient to show a valid levy and assessment, and a valid lien will not arise from an invalid levy and assessment. Although it may be that when a tax is subsequently properly levied the lien may relate back to the 1st day of January of the year in which the proper levy should have been made. Second, if the stipulation were sufficient to make prima facie showing of regularity up to the sale to the County, it would be sufficient to show that the County got valid title, which, under the holding of *Fisher* v. *Wright,* supra, would merge the County's lien with its title. Third, even if we disregard this dilemma and assume that the County had a valid lien at the time it executed and delivered the quitclaim deed to the plaintiff, such quitclaim deed could not be held to have been an assignment of said lien. In *Sorensen* v. *Bills,* 70 Utah 509, 261 P.

450, 452, in holding that the County's lien for delinquent taxes could not be assigned we stated:

"Millard county has at best only a lien for the unpaid delinquent taxes assessed against the premises after the date of the redemption in 1919. * * * No authority is found in the statutes authorizing the commissioners, or any county official, to assign a lien given to the municipality by virtue of taxes levied. * * * The general rule applicable is stated in Black on Tax Title (2d Ed.) § 151, as follows: 'Thus, unless they (the taxes) are expressly and by plain implication authorized to be assigned legally or equitably, they are incapable of assignment, and no one can be subrogated to the rights and remedies of the state or muncipality.'"

The lien which is given to the County is a right to resort to the property for the tax debt, but where the tax debt is paid by a sale to a private purchaser, the debt is paid and the right to resort to the property is gone. There is no right to resort to the property for a reimbursement of the purchase price paid to the County. The statute gives no such right nor does the law. The principle of caveat emptor applies. See concurring opinion in *Fisher* v. *Wright,* supra.

The judgment of the lower court was correct. It must be and is hereby affirmed. Costs to the respondents.

McDONOUGH, WADE, and MOFFAT, JJ., concur.

LARSON, Justice (concurring).

I concur in result. My views as to the matters herein discussed are set forth in *Telonis* v. *Staley,* 104 Utah 505, 106 P. 2d 163.