REEVE et al. v. BLATCHLEY et al.

No. 6640.  Decided April 13, 1944.  (147 P. 2d 861.)

See 61 C. J. Taxation, sec. 206.  44 Am. Jur. 55.

*Lewis J. Wallace* and *Derrah B. Van Dyke,* both of Ogden, for appellants.

*Parley E. Norseth* and *Thatcher & Young,* all of Ogden, for respondents.

LARSON, Justice.

Appeal on the judgment roll from the District Court of Weber County. Plaintiffs, appellants herein, commenced an action against defendants to quiet title to real property. Defendant Blatchley filed a disclaimer. The other defendant Miller, respondent and cross-complainant, answered and counterclaimed, asserting title in himself by virtue of a tax deed from Weber County, and asked that if his tax title be held void that plaintiffs be required to reimburse him for the amounts paid to Weber County for taxes assessed against the property. Plaintiffs replied alleging they held a judgment against Blatchley for $999, which they asked be set off against any amount found due Miller for taxes paid.

The court decreed title to be in plaintiffs subject to a lien in favor of Miller for the full amount paid to Weber County, and refused to allow plaintiff any set off. Plaintiffs appeal from that portion of the judgment refusing to allow the set off. Defendant Miller cross-appealed from that part of the judgment adjudging title to be in plaintiffs. Since this appeal was taken, our decisions in *Curley* v. *Mills,* 139 P. 2d 882, and *Telonis* v. *Staley,* 144 P. 2d 513 (on rehearing),

has settled the questions involved in the cross-appeal adversely to cross-appellant, and it was not argued at the hearing.

The stipulation of the parties and the findings of the court established the following facts: That at all times since 1930 plaintiffs were the owners of the property; that they failed to pay the taxes assessed against said property for the year 1931, and in 1936 the property was offered for sale at the May sale. No bids were received and thereafter the Board of Commissioners of Weber County, by contract, agreed to sell the property to Blatchley; on which contract Blatchley paid the sum of $450. At the time Blatchley entered into the agreement to purchase the property from Weber County he was in possession of it as a tenant of plaintiffs under an oral lease. However, he had no duty to pay the taxes. Some time prior to 1937 he had defaulted in the payment of rent. For his failure to pay rent and for damages for unlawful detainer, in 1937, judgment for $999 was obtained against him by the plaintiffs in the city court. The judgment had not been satisfied. In 1939 Blatchley with the consent of the Board of Commissioners, assigned and quitclaimed his interest in the property involved herein to respondent Miller, who thereupon paid to Blatchley the sum of $450, and thereafter paid to the county for the balance due on said contract, taxes and assessments, the sum of $563.22. Miller took without actual knowledge of any defenses as between his assignor and appellants. The court found the tax sale to be void.

The questions calling for our decision follow: (1) Is the assignee of, or purchaser from a tax title claimant, when his tax title is voided at the suit of the owner who did not pay the taxes, entitled to reimbursement for taxes paid before the owner's title be quieted against the tax title holder, or to put it another way, is Miller, who acquired Blatchley's interest and contract in the lands and tax sale involved, entitled to recover from Reeve, the full amount of the taxes paid before Reeve's title be quieted by the court? (2) In

such suit, what obligations due him from the tax title claimant can the legal owner offset against the taxes so paid?

We consider them in order. (1) The owner who seeks to have his title quieted against a void tax deed must reimburse the tax title purchaser for all taxes lawfully levied and paid by the tax title purchaser. *Bolognese* v. *Anderson,* 87 Utah 455, 49 P. 2d 1034; Id., 97 Utah 136, 90 P. 2d 275; *Burton* v. *Hoover,* 93 Utah 498, 74 P. 2d 652; Cooley on Taxation, 4th Ed., Vol. 4, Sec. 1508. Can one who has purchased from the tax title purchaser, when sued in an action to quiet title, demand from the owner reimbursement of all taxes paid by himself or his predecessors under the tax title? The right to reimbursement for taxes paid does not exist at law, even in favor of the original tax title purchaser, *Anson* v. *Ellison,* 104 Utah 576, 140 P. 2d 653; 37 Cyc. 1537; Cooley on Taxation, 4th Ed., Sec. 1553, and cases there cited. But in equity this right in the original purchaser has been recognized to a limited extent. Cases cited supra. See also *Holland* v. *Hotchkiss,* 162 Cal. 366, 123 P. 258, L. R. A. 1915C, 492, and annotation thereto. An original action will not lie in equity, any more than in law, to collect such payment or to impress a lien on the property therefor. *Anson* v. *Ellison,* supra; 26 R. C. L. p. 463; *Joliet Stove Wks.* v. *Kiep,* 230 Ill. 550, 83 N. E. 875, 12 Ann. Cas. 227 and note; Cooley on Taxation, Vol. 4, Sec. 1553 and 1556, 4th Ed., and cases cited. *Greenwood* v. *Adams,* 80 Cal. 74, 21 P. 1134. But some courts of equity, this jurisdiction among them, have held that they will not quiet the owner's title until he reimburses the other party for the taxes paid by him. *Bolognese* v. *Anderson,* supra; *Anson* v. *Ellison,* supra. This is upon the basis that he who seeks equity must do equity. If while the tax title is in the county, the title and sale be declared void, the county may reassess the property for that year (Sec. 80-5-17 and 80-10-30, U. C. A. 1943) or may the next year resell the property for such delinquent taxes (Sec. 80-10-40, U. C. A. 1943) depending on the grounds upon which the sale was voided. But when the county sells its tax title, it receives its money and its tax lien is extinguished. *Anson* v. *Ellison,*

supra. Since the county has received the taxes levied upon the property, it cannot now go back and reassess it, or resell for the taxes when the tax sale is declared void by the court. The owner, in having the tax sale and tax title voided against the purchaser, takes his property back free and clear of the tax lien, and not subjet to the payment to the county of such taxes as the purchaser paid. To permit this would countenance unjust enrichment at the expense of an innocent party. This a court of equity will not do. But even this rule is limited to taxes which were or could have been lawfully levied on the property. If the tax itself was an illegal one, and not merely erroneous in some respects, reimbursement need not be made. *Harper* v. *Rowe,* 53 Cal. 233; *Lufkin* v. *City of Galveston,* 73 Tex. 340, 11 S. W. 340; *Chicago M. & St. P. R. Co.* v. *Kootenai County,* 33 Idaho 234, 192 P. 562; Cooley on Taxation, 4th Ed., Sec. 1508. And if the tax be a lawful tax in part and unlawful in part, reimbursement need not be made for the unlawful part. Cases supra. *Smith* v. *Enterprise Irrig. Dist.,* 160 Or. 372, 85 P. 2d 1021; *Security Land & Inv. Co.* v. *Ranger Realty Co.,* 115 Fla. 640, 156 So. 23. The rule therefore as invoked by the court of equity may be stated thus: One who asks a court of equity to decree his title to be free from tax liens must pay the amounts of taxes lawfully assessed against the property before the court will decree it free and clear of such taxes.

Since the tax title claimant cannot maintain an action for the taxes, and can only assert them when action is brought against him to extinguish of record his claim, it is evident that the court of equity does not recognize in him a right in law or equity to recover what he paid to extinguish a tax lien. What the court of equity does is to impose upon the owner the duty of himself paying the amount of the taxes before it will enter a decree establishing in effect that there are no claims against the property for such taxes. This is further evidenced by the fact that if the owner refuses to reimburse the tax title claimant, the court does not quiet title in claimant, nor does it enter a

judgment for the amount in his favor. The court just refuses its decree in favor of the owner, and leaves the parties where it found them.

Since the court is exercising its prerogative against the owner to make him do equity, by making whole the party who is out the money that cleared his land of taxes, it can make no difference whether such party be the original purchaser from the county, or one who takes from ■ such purchaser. Equity imposes the obligation on the owner to make whole the party who is out the money; it does not create a claim in favor of the man who paid the county. It follows that the party who in the suit claims the tax title to the property being the one who will be out by decree in plaintiff's favor is the party to whom the owner must do equity. *State ex rel. Babcock* v. *Chisago County*, 115 Minn. 6, 131 N. W. 792, Ann. Cas. 1912D, 669. Reeve therefore should be required to reimburse Miller for the total taxes paid to the county, whether by Miller directly to the county, or by him to reimburse Blatchley for the amount of taxes Blatchley paid the county.

(2) It is not within the functions or powers of a court of equity to determine, fix or enforce rights between parties not properly before the court by virtue of the litigation pending. Nor does a court of equity extend its powers to enforce rights for which the law has provided remedies. And a court of equity will not compel one to pay a debt which can be enforced at law simply because such person be brought into a court of equity on another matter. Nor does a court of equity constitute itself a collection agency. Here Reeve brought Miller into court to determine the validity of a tax title held by Miller to the land owned by Reeve. Since it is admitted that Reeve did not pay the taxes, through payment of which Miller and his predecessor in interest deraigned their claim of title, the court required Reeve to reimburse Miller for the money paid the county in satisfaction of its tax claim. Reeve now contends that he should be permitted to set off against Miller's claim for taxes paid, a money judgment he held against Blatchley, Miller's prede-

cessor in interest, for rent and unlawful detainer of the land during the time Reeve held the title and Blatchley was his tenant. Should such set-off be permitted? Clearly it does not come within the reason or the rule under which equity requires the owner to reimburse the man who paid the taxes, which inure to his benefit, before it quiets his title against such tax title. Neither the judgment, nor the claim out of which it arose, nor its payment affect the title of the property, nor inure to the benefit of Reeve's title by removing any liens or claims against it, or free it from any liability for taxes or other apparent obligations or interests which Reeve seeks to extinguish. It is equally clear that it does not come within the statutory grounds for set-off or counter-claim (Sections 104-9-2 and 104-9-4, U. C. A. 1943), because those sections expressly provide that such claim must be one upon which a judgment might be had in favor of the one who asserts the claim against the other party, and must arise out of the transaction set up in the complaint, or be a claim upon a contract between the parties, if the complaint is founded upon a contract. But such claims may be compensated as far as they equal each other (set off) only when they are such that one could be pleaded as a counter-claim against the other. Reeve's judgment against Blatchley for unlawful detainer does not arise out of the transaction set forth in plaintiff's complaint, to quiet title, nor the transaction by which Reeve is required to pay Miller the amount of taxes paid the county; neither is Reeve's judgment nor the requirement that he reimburse Miller for the taxes, founded upon contract. Again, the two items are not mutual or cross-demands between the parties, because Reeve could not enforce, and had no right to demand payment of, the Blatchley judgment from Miller. Furthermore, Miller did not have a cause of action, or claim upon which he could found a cause of action, against Reeve, to recover the monies paid the county as taxes or for the tax title. Since he had no claim of which the law could take cognizance, they certainly could not be cross-demands, or "set off" by compensating claim against claim.

Should the court under its general equity powers allow this set-off? The question might even be made broader and say: Can a court under its general equity powers allow this set-off? It is argued that not to allow the set-off would be an unjust enrichment of someone. There could be no unjust enrichment of Blatchley, because he paid the county $450 for the taxes, of which Reeve received the benefit. Since Reeve gets the property, Blatchley would be $450 "in the hole," except for the fact that Miller paid Blatchley that sum, which leaves Blatchley no richer and no poorer. When Reeve takes the property, after Miller repaid Blatchley and paid the county the balance of taxes, Miller is $1,185.54, with interest, "in the hole" and Reeve would be unjustly enriched by that amount. When the court required Reeve to reimburse Miller, all three parties were where they would have been had Reeve paid his taxes or redeemed his property from the county. There is now no unjust enrichment of anyone. To allow Reeve to offset the Blatchley judgment against Miller, equivalent to collecting the Blatchley judgment from Miller, unjustly enriches Blatchley $450; unjustly enriches Reeve $450 and unjustly impoverishes Miller that amount, for the benefit of Reeve. (Miller is the only one who had nothing to do with the transaction between Reeve and Blatchley; the only one not chargeable with some neglect of his obligations.) To thus impoverish the only one who met all of his obligations, for the benefit and enrichment of the two who had defaulted in theirs, will not appeal to the conscience of any chancellor. I think that is enough said, but let us look at the authorities. At law a party cannot use a matter as a set-off unless it is a legally subsisting cause of action in his favor and upon which he could maintain an independent action. *United States* v. *Norvell,* D. C., 20 F. 2d 670, affirmed, 5 Cir., 24 F. 2d 1019; *Shipp* v. *Davis,* 78 Ga. 201, 2 S. E. 549; *Hurford* v. *Norvall,* 39 Okl. 496, 135 P. 1060; *Geo. Irving Co.* v. *Acunto,* Sup., 162 N. Y. S. 919; *Meyer* v. *Montgomery,* 87 Mich. 278, 49 N. W. 616; 57 C.J. page 387, and cases cited. In equity, under special circumstances a set-off upon which an independent action

could not be maintained may be allowed. But even in equity, the claim allowed as a set-off must be one that runs against the party to whom it is to be applied. No one will contend that Reeve could maintain an action against Miller either on the Blatchley judgment, or on the cause of action upon which it was obtained. If Reeve be allowed to set off the judgment against Miller it would allow him to do that indirectly which he cannot do directly; to accomplish by way of set-off that which he would be debarred from asserting in a direct action. This he may not do. *Russell, Assignee,* v. *Owen,* 61 Mo. 185. A demand cannot be set off in equity any more than in law unless it exists in favor of the person asserting and against the party sought to be held. *Iler* v. *Midland Nat. Bank,* 69 Mo. App. 64; 57 C. J. p. 387. It is conceded that there was no obligation due from Miller to Reeve, or anyone else to offset any part of the amount the court directed Reeve to pay Miller as a condition for having his title quieted. There being no such obligation, there is nothing to set off. *United States* v. *Norvell,* supra; *Pine River Co.* v. *United States,* 186 U. S. 279, 22 S. Ct. 920, 46 L. Ed. 1164; *Stanley* v. *Schwalby,* 162 U. S. 255, 16 S. Ct. 754, 40 L. Ed. 960. The grounds upon which equitable set-off will be allowed are discussed in 57 C. J. pages 362, 363, 364, and cases there cited, wherein it is declared that equity ordinarily will not aid a set-off where legal remedies are adequate, unless necessary to prevent wrong and injustice; and that the party seeking it must show equitable grounds therefor, and the set-off will not be allowed when it would be inequitable or work injustice; that "an equitable right of set-off must not only be a natural equity but such an equity as can be enforced by judicial action, and not arising merely from moral considerations. 57 Cyc. 363; *Van Pelt* v. *Boyer,* 8 How. Prac., N. Y., 319. A mere right of set-off is not itself an equity; it becomes so in consequence of some additional circumstances. *Graham* v. *Tilford,* 1 Metc. 112, 58 Ky. 112. The general rule is that equity will not set off against a claim of one person, a claim of his debtor against another. *Balbach* v. *Frelinghuysen,* C. C.,

15 F. 675; *In re Steele-Smith Dry Goods Co.*, D. C., 298 F. 812; and an extensive anotation in 57 A. L. R. p. 778 ff; supplemented by annotation in 93 A. L. R. p. 1164 ff.

All that a court of equity should require as a condition to quieting title in the owner against a tax title claimant is that he pay to such claimant the sum advanced by the latter to pay the taxes less any benefit which he derived from the property supposedly purchased. The only "equities" to be considered are those which flow from claimant's dealing with the tax title. The tax title failing, he should be placed in no worse and no better position than had he not dealt with such title at all. This requires merely that he be paid—as a condition to quieting title in his adversary—the amount he is out of pocket by reason of his purchase. Hence, even as between the plaintiff and Blatchley, the former should not be permitted to offset against the amount paid on the taxes, his judgment against Blatchley. The chancellor should confine his inquiries to the transaction which resulted in the title conflict and the benefits and detriments ensuing therefrom. The entry of a decree quieting title should leave the parties in statu quo. This is equitable. The one purchasing a tax title should not, in a proceeding in which such title is held invalid, be adjudged to have paid the money on a judgment or a debt due the owner, when he thought he was paying for the property and which did pay the taxes of the owner.

The fact that the judgment here sought to be offset against the sum paid in extinguishment of the county's tax lien, was secured in an unlawful detainer action against Blatchley as occupant of the premises, title to which was being litigated, would not justify its being offset, any more than if such judgment had been obtained on a promissory note or for goods sold and delivered. As far as the record discloses, Blatchley's contract of purchase with the county had no connection whatever with his contract of tenancy with Reeve. The trial court was right in refusing to offset such judgment against the taxes Miller paid.

This disposes of every question raised in the pleadings or involved in the stipulation of facts, the findings, conclusions and the judgment of the trial court, the errors assigned or discussed in the briefs or in the oral argument. We therefore pursue the inquiry no further.

From what has been said it follows that the tax title claimant, Miller, does not acquire a lien on the property for the monies he paid to remove the county's tax lien, and the court was in error in declaring a lien and ordering a sale of the property to satisfy the same; it also follows that the court should not enter the decree quieting title in the owners (Reeve et al.) until they repay to Miller the full amount paid to the county on account of its tax claims, with interest; that the judgment of plaintiffs against Blatchley cannot be off set against the claims of Miller for taxes paid.

The action is remanded to the District Court of Weber County with directions to set aside the decree heretofore entered, and to enter an order and decree in harmony with the views herein expressed.

Each party to bear their own costs.

McDONOUGH, J., concurs.

WOLFE, Chief Justice (concurring in the result).

I concur in the result of this opinion and in much of the reasoning. There are parts which I think unnecessary or statements with which I cannot agree or in regard to which I entertain doubt. I shall advert briefly to these statements in specifying the grounds on which I base my concurrence.

I agree that the chancellor will ordinarily, as a condition to quieting title, require the owner to pay all taxes which the owner should have paid had the tax procedure required by the statutes been correctly followed. I am not prepared to say that the chancellor "must" require reimbursement by the owner. It depends on the equities of the situation and the chancellor may have some discretion. In some situations the owner may honestly con-

tend that the property was overassessed and that he had no opportunity to contest it. In such case the chancellor might perhaps himself determine what the lawful tax should have been or refer it to a master. Ordinarily the county, having received the taxes, would not be interested in reassessing it, but I would not want to go so far as to say that the county could not "go back and reassess it," although I cannot at present conceive of a situation in which it would or could do so. However, to say in this decision that it could not do so is unnecessary.

It appears to me that the statement reading "One who asks a court of equity to decree his title to be free from tax liens must pay the amounts of taxes lawfully assessed against the property before the court will decree it free and clear of such taxes" gives a wrong implication and is inconsistent with other parts of the opinion. The property is free of taxes. The tax title purchaser has paid them. The opinion itself sets out direcelty under the above statement the following:

"Since the tax title claimant cannot maintain an action for the taxes, and can only assert them when action is brought against him to extinguish of record his claim, it is evident that the court of equity does not recognize in him, a right in law or equity to recover what he paid to extinguish a tax lien."

I agree with that statement. The opinion then reads:

"What the court of equity does is to impose upon the owner the duty of himself paying the amount of the taxes before *it will enter a decree establishing in effect that there are no claims against the property* for such taxes." (Italics added.)

Here again the idea creeps in that there is a claim for taxes against the property and that equity performs the function of declaring it "free and clear of such taxes." The real situation is reflected by what next follows in the opinion reading:

"This is further evidenced by the fact that if the owner refuses to reimburse the tax title claimant, the court does not quiet title in

claimant, nor does it enter a judgment for the amount in his favor. *The court just refuses its decree in favor of the owner, and leaves the parties where it found them.*" (Italics added.)

With the above observations, I agree with the reasoning of the opinion in its answer to the first question propounded.

In its treatment of the second question I again sense confusion. I place my concurrence on the simple grounds that a court of equity in a case where an owner sues to quiet title will not go outside of matters arising out of and after the purchase of the tax title. Everything else is irrelevant. It is a fair intendment from the record that the judgment for $999 was for detainer before the tax title was purchased; therefore it does not arise from, out of, or after the tax title purchase. I think the opinion correctly states the ground in the part where it sets out that:

"Clearly it does not come within the reason or the rule under which equity requires the owner to reimburse the man who paid the taxes, which inure to his benefit, before it quiets his title against such tax title. Neither the judgment, nor the claim out of which it arose, nor its payment affect the title of the property, nor inure to the benefit of Reeve's title by removing any liens or claims against it, or free it from any liability for taxes or other apparent obligations or interests which Reeve seeks to extinguish."

"All that a court of equity should require as a condition to quieting title in the owner against a tax title claimant is that he pay to such claimant the sum advanced by the latter to pay the taxes less any benefit which he derived from the property supposedly purchased. The only 'equities' to be considered are those which flow from claimant's dealing with the tax title. The tax title failing, he should be placed in no worse and no better position than had he not dealt with such title at all. This requires merely that he be paid—as a condition to quieting title in his adversary—the amount he is out of pocket by reason of his purchase. Hence, even as between the plaintiff and Blatchley, the former should not be permitted to offset against the amount paid on the taxes, his judgment against Blatchley. The chancellor should confine his inquiries to the transaction which resulted in the title conflict and the benefits and detriments ensuing therefrom. The entry of a decree quieting title should leave the parties in statu quo. This is equitable. The one purchasing a tax title should not, in a proceeding in which such title is held invalid, be adjudged to have paid the money on a judgment or a debt due the owner, when

he thought he was paying for the property and which did pay the taxes of the owner.

"The fact that the judgment here sought to be offset against the sum paid in extinguishment of the county's tax lien, was secured in an unlawful detainer action against Blatchley as occupant of the premises, title to which was being litigated, would not justify its being offset, any more than if such judgment had been obtained on a promissory note or for goods sold and delivered. As far as the record discloses, Blatchley's contract of purchase with the county had no connection whatever with his contract of tenancy with Reeve. The trial court was right in refusing to offset such judgment against the taxes Miller paid."

After setting out such proper grounds a treatment of what is counterclaimable under the statute seems confusing and unnecessary if not inconsistent.

For the same reasons, to wit that "the chancellor should confine his inquiries to the transaction which resulted in the title conflict and the benefits and detriments ensuing therefrom," all discussion as when a set-off is allowable in law or equity is irrelevant and confusing because the judgment did not concern the "title conflict."

Another minor inaccuracy occurs: The opinion says

"Miller took without actual knowledge of *any defenses* as between his assignor and appellants." (Emphasis added.)

From the opinion it appears that this is not a case which involves a defense by the appellant against the assignor, Blatchley, which under Sec. 104-3-2, the assignee Miller would be subject to, because it is a matter of doing equity and equity does not recognize a matter not arising after or out of the title purchase, nor do I think would equity in any case be bound to follow that statute. Section 104-3-2 covers the case where one has a claim or right against another which he assigns to a third. In this case there was no contractual relationship between the plaintiffs and Blatchley as far as Blatchley's interest in the property was concerned.

For the reasons herein stated, I concur in the result and in the reasoning supporting that result insofar as I have indicated.

WADE, Justice (dissenting).

I dissent. Plaintiffs, the owners of the property in question, failed to pay the taxes and at the May sale for 1936 the property was sold to the county. At that time Blatchley was renting the property from the plaintiffs and was in arrears in the payment of his rent; instead of paying the rent, he entered into a contract with the county to purchase the tax title to the property and thereafter paid on such contract $450. Later, plaintiffs obtained a judgment in the City Court for $999 for accrued rents and damages. Thereafter Blatchley assigned and quitclaimed his interest in the property and in the contract with the county to Miller who repaid him the $450 and paid the balance on the property to the county, making a total of $1,185.54 paid to Blatchley and the county. Plaintiffs brought this action to quiet their title to the property, and Blatchley disclaimed any interest. Miller asked that plaintiffs be required to repay the money which he had paid to Blatchley and the county before plaintiffs' title to the property be quieted. Plaintiffs asked that their judgment against Blatchley be set-off against Miller to the extent that Blatchley had paid the county. The court refused to allow any set-off against Miller; held that his claim constituted a lien against the property and ordered that the lien be foreclosed in the event plaintiffs failed to pay. After the transfer to Miller, Blatchley remained in possession of the property as Miller's tenant.

I think that the court should have deducted the $450 which Blatchley paid to the county from the amount it required the plaintiffs to pay Miller, and also that the court should have taken an accounting of the value of the use and occupation of the premises during the time that Miller held possession thereof through Blatchley, his tenant. During this discussion I assume that plaintiffs were unable to collect their judgment against Blatchley, otherwise there would be no point in trying to offset it against Miller.

When Blatchley transferred his interest in the contract with the county to Miller he owed plaintiffs $999 on the

judgment for the rent of the premises and for damages. Had there been no assignment, it would clearly have been inequitable to require plaintiffs to repay to Blatchley the money which he had paid the county before quieting plaintiff's title, while Blatchley owed on the judgment for the rent of the premises. Yet that is what I understand the prevailing opinion holds to be equitable. Such a rule would pay a premium to those who refuse to pay their honest obligations and attempt to take advantage of such refusal by obtaining the title to their benefactors' property. It might well be that plaintiffs were deprived of the means of paying their taxes by Blatchley's failure to pay the rent. Would it be equitable under such circumstances to require plaintiffs to repay the money which Blatchley had paid to the county, which should have been paid as rent, as a condition of quieting their title? Since the tax title was invalid it is not necessary to determine whether a tenant may purchase a tax title as against a landlord, but clearly when Blatchley assigned to Miller he had no right, title, interest or equity in the premises or against the plaintiffs. Did he by his assignment transfer to Miller a better right than he had?

Did Miller, by his dealings with and payment to Blatchley, place himself in such an equitable position that a court should require plaintiffs to reimburse him for the money which he paid Blatchley before it will quiet plaintiffs' title to the property? If so, then by this attempt to purchase Blatchley's interest he is in a better position than he would have been had he attempted to purchase a chose in action against plaintiff to which plaintiff had a good defense, or had he attempted to purchase real estate or personal property from Blatchley which Blatchley did not own. In either one of those cases he would have received no greater right than Blatchley had even though he parted with his money without any knowledge of any defect or defense to Blatchley's title or right to the property. He was not an innocent purchaser for value because every one who deals with tax titles has notice that he does so at his own risk. He is not in the position of one who purchases a negotiable instrument

without notice of defects, because the requirements of trade and commerce or of sound public policy do not make it necessary that such interests be made transferable free from defenses. Nor does the fact that the equitable right to be reimbursed by the owner is limited to a case where the owner seeks to quiet his own title to the property, indicate that the right is so highly equitable that an assignee should take it free from defenses of the owner. Miller did not deal with Blatchley relying on any action of the owner, nor did the owners receive any benefit by reason of Miller's payment to Blatchley, as Blatchley had already paid the county to the extent of that payment.

There is a further reason why equity should not require plaintiffs to reimburse Miller for his payment to Blatchley. Blatchley had been in possession of plaintiff's property as their tenant and was in arrears in the payment of his rent, and while in that condition he attempted to purchase from the county the tax title to the property he was renting; then when plaintiffs sued to recover the rents owing he transferred his interest in the tax title to Miller but still continued to occupy the premises. The court has found that Miller was not a party to any scheme whereby Blatchley attempted to purchase the purported tax title while occupying the premises and owing rent therefor to plaintiffs, and that he had no notice of any defense which plaintiffs had against Blatchley. But the facts of whether such a transaction is bona fide, and whether the assignee has actually paid his money without any knowledge of defenses, are usually of such a nature that they are known only to the assignor and assignee, and the owner has no way of proving them. Under such circumstances it would be fairly easy for the purchaser of a tax title from the county to assign and quitclaim the same to a third person and prove that the transaction was bona fide even though the facts were otherwise. A holding that the assignee takes free from defenses in the owner as against the purchaser of the tax title would invite fraud and underhanded dealings. Thus the court erred in not allowing the debt which Blatchley owed the

plaintiff to cancel Miller's equity to be reimbursed for the money which he paid Blatchley.

As to the amount Miller paid directly to the county and which released its claim for taxes he would have been entitled to reimbursement. However, Miller by his pleadings affirmatively alleges possession of the premises by himself since November 6, 1939. Since there is no issue remaining as to the invalidity of the tax title, plaintiffs never lost the paramount title, so they were entitled to an accounting for the value of the use and occupation of the premises while in Miller's possession. As held in *Skeen* v. *Smith*, 75 Utah 464, 286 P. 633, 634, the tax title claimant "was bound, when her tax title failed, to account to the paramount owner for the value of the use and occupation of the land while in her possession  *  *  *  which exceeded the amount paid on account of taxes." If it is equitable to require the paramount owner to reimburse the tax title claimant whose tax title has failed, for the amount expended to release claims of taxes, in order to prevent unjust enrichment, it follows that it is equitable to require the tax title claimant to account for the value of the use and occupation of the premises while in possession. See also *Emery* v. *Stansbury*, 173 Okl. 478, 49 P. 2d 155, 157, wherein the court aptly stated:

"Also, since the resale tax deed was void the defendant acquired no rights thereunder and was not entitled to collect any rents or profits therefrom and must account to the plaintiff for any rents received by him less the taxes, penalties, interest, and costs justly chargeable on the land and paid by him.  *  *  *

"If the defendant is unable to account for the rents collected by him from the land in question, and if, by virtue of the void deed, he has deprived plaintiff of the use and occupancy of the land, then plaintiff is entitled to recover from him the reasonable rental value of the premises  *  *  *  less the taxes, etc., paid by the defendant."

If the use and occupation of the premises had a value during the time Miller has been in possession, he has a duty to account therefor to plaintiffs. If that value was in excess of the amount which Miller paid in taxes to the county, he has no right to be reimbursed for any sum of money he has

actually paid directly to the county. If he were not required to account for the value of the use and occupation for the period he has been in possession when he had no title, and also recover from the plaintiffs the amount he paid to the county in taxes, he would be unjustly enriched. The trial court improperly ordered plaintiffs to reimburse Miller for the money paid to the county for taxes without also requiring Miller to account for the use of the premises while in possession.

I, therefore, think that the judgment should be reversed and a new trial be granted, and that the plaintiffs should be allowed to amend their pleadings to ask for an accounting for the value of the use and occupation of the premises during the time that Miller had possession, and that plaintiffs' judgment should be offset against the amount which Miller paid to Blatchley.

MOFFAT, J., participated in the hearing, but died before the publication of the opinion.