In re UNITED CONSTRUCTION AND
DEVELOPMENT COMPANY,
Debtor.

In re BRIAN HEAD HOTEL
CORPORATION, Debtor.

FIRST AMERICAN SAVINGS BANK,
FSB, Greensboro, North Carolina, and
FDIC, as Receiver for American Federal Savings & Loan Association,
Anderson, Indiana, Trustees, Plaintiffs/Appellees,

v.

IRON COUNTY, a political subdivision of
the State of Utah; Robert L. Gardner,
Gene E. Roundy and James C. Robinson in their official capacity as Iron
County Board of County Commissioners; Dennis Ayers, in his official capacity as the Iron County Assessor; and
Merna Mitchell in her official capacity
as Iron County Treasurer, Defendants/Appellants.

No. 92–C–139A.
Bankruptcy Nos. 85C–03657, 85C–03656.
Adv. No. 900744C.

United States District Court,
D. Utah,
Central Division.

May 27, 1992.

Kent L. Christiansen, Christiansen &
Sonntag, Salt Lake City, Utah, for defendant Iron County.

Steven H. Gunn, Ray, Quinney & Nebeker, Salt Lake City, Utah, for plaintiff/appellee First American Sav. Bank.

Mary Ellen Sloan, Deputy Salt Lake Co.
Atty., Salt Lake City, Utah, for amici curi-

ae, Salt Lake County and Utah Ass'n of Counties.

## ORDER AFFIRMING FINAL ORDER OF BANKRUPTCY COURT

ALDON J. ANDERSON, Senior District Judge.

This matter came before the court on Defendant/Appellant Iron County's appeal from a final order of the bankruptcy court. Pursuant to 28 U.S.C. § 158(a) (1988),[1] this court exercises appellate jurisdiction to review final orders of the bankruptcy court. The court heard oral argument on May 15, 1992, and took the matter under advisement. Kent L. Christiansen, Christiansen & Sonntag, of Salt Lake City, Utah, appeared for Iron County. Mary Ellen Sloan, Deputy Salt Lake County Attorney, Salt Lake City, Utah, appeared on behalf of amici curiae Salt Lake County and the Utah Association of Counties. Steven H. Gunn of Ray, Quinney & Nebeker, Salt Lake City, Utah, appeared for the Plaintiff/Appellee First American Savings Bank. The court having thoroughly reviewed the record and the applicable law now affirms the final order of the bankruptcy court.

### I. BACKGROUND

On November 1, 1985, United Construction and Development Co. [hereinafter United] filed a petition under chapter 11 of the bankruptcy code. United's bankruptcy estate included real property known as the Brian Head Hotel, located in Brian Head, Iron County, Utah. Thereafter, United's petition was converted to a petition under chapter 7 of the bankruptcy code, and on August 11, 1987, the chapter 7 trustee, as authorized by the bankruptcy court, sold the hotel. By operation of the bankruptcy code, all liens on the hotel became liens on the sale proceeds. *See* 11 U.S.C. § 363 (1988). The sale proceeds are currently held in escrow by the chapter 7 trustee.

Appellees, First American and seven other financial institutions, claim a first priority lien on the sale proceeds by virtue of a trust deed recorded on October 7, 1983. Iron County, whose claim involves ad valorem property taxes assessed on the hotel for tax years 1986 and 1987, asserts a lien position superior to appellees by virtue of the bankruptcy code and Utah state law.

On May 12, 1990, the United States Bankruptcy Court for the District of Utah entered an order holding that Iron County's 1984 and 1985 tax liens held priority over all other liens on the sale proceeds. Consequently, the chapter 7 trustee paid Iron County the tax claims for these years. On December 10, 1991, the bankruptcy court entered an order declaring Iron County's 1986 and 1987 tax liens subordinate to the secured creditors's trust deed. *First Am. Sav. Bank v. Iron County (In re United Constr. and Dev. Co.) (In re Brian Head Hotel Corp.)*, 135 B.R. 904 (Bankr. D.Utah 1992). Iron County, in this appeal, challenges the bankruptcy court's order.

### II. DISCUSSION

■ "This court, when hearing a bankruptcy appeal, may not set aside findings of fact made by a bankruptcy court unless they are clearly erroneous." *Yeates v. Yeates (In re Yeates)*, 44 B.R. 575, 580 (D.Utah 1984) (citing Bankruptcy Rule 8013). "Questions of law, on the other hand, are freely reviewable on appeal." *Id.* Because this appeal involves issues of law, the court is not bound to adopt the conclusions of the bankruptcy judge, but exercises *de novo* review.

■ Distilled to its simplest form, the issue before the court is whether, under Utah law, real property taxes which are assessed for periods subsequent to the filing of the debtor's petition in bankruptcy give rise to a first priority tax lien on the property of the bankruptcy estate. To resolve this issue, the court must determine

---

1. Section 158(a) provides the following:
   The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges entered in cases referred to the bank- ruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

whether Iron County held a pre-petition interest in the hotel that is perfectible post-petition. Because the court finds that, under Utah law, real property taxes relate back only to the date of attachment, January 1 of each year, Iron County did not have a pre-petition interest in the Brian Head Hotel for tax years 1986 and 1987, and consequently, does not have priority as to the remaining sale proceeds.

In this appeal, Iron County and the amici curiae essentially present three arguments: (1) that under *Maryland National Bank v. Mayor of Baltimore,* 723 F.2d 1138 (4th Cir.1983) the county has an "ever-present interest" in property subject to its jurisdiction; (2) that, under *Union Central Life Insurance Co. v. Black,* 67 Utah 268, 247 P. 486 (1926), tax liens have a superior position to all other liens, and that, under Utah Code Ann. § 59–2–309 (1991),[2] these liens relate back as far as five years; and (3) that the public policy of maintaining and operating good government necessitates the uniform collection of taxes. First American's principal contention is that automatic stay of 11 U.S.C. § 362(a)(4) precludes creation of a post-petition tax lien for 1986 and 1987.

Explication of two bankruptcy code sections is necessary to a complete understanding of the issue presented and its resolution. The court turns first to the automatic stay provisions found in section 362. The House of Representatives Report on the Bankruptcy Reform Act of 1978 describes the function of section 362:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296. With exceptions, section 362(a)(4) stays "any act to create, perfect, or enforce any lien against the property of the estate." But for the specified exceptions, Iron County's tax lien could not attach, because such a lien would violate the automatic stay. The only applicable exception, section 362(b)(3), provides, however, that the filing of a petition does not operate as a stay under section 362(a) "of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under 546(b) of this title."

Section 546(b), in turn, provides as follows:

The rights and powers of a trustee under section 544,[3] 545,[4] and 549 [5] of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an

---

**2.** *Section 59–2–309(1), which applies to property that the county has mistakenly failed to assess, provides, in part, as follows:*

Any escaped property may be assessed by the original assessing authority at any time as far back as five years prior to the time of discovery[.]

**3.** Section 544 provides in relevant part as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
. . . .
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to

be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**4.** Section 545 deals with statutory liens and reads in relevant part:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists[.]

**5.** Section 549 is a lengthy provision that authorizes the trustee to certain transfer of estate property occurring after the commencement of the bankruptcy case.

entity that acquires rights in such property before the date of such perfection....

The Third Circuit, addressing in a similar case whether a taxing authority held a prepetition interest that was perfectible postpetition, explained section 546(b):

> The legislative history of [section 546(b)] explains, "if an interest holder against whom the trustee would have rights still has, under applicable non-bankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee." H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6327. The legislative history also indicates that "generally applicable law" means "provisions of applicable law that apply both in bankruptcy cases and outside bankruptcy cases," and warns that "[the phrase] is not designed too [sic] give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases." *Id.*
>
> In essence, these provisions establish an exception to the bar of the automatic stay where a creditor has a pre-petition interest in property that can be perfected under state law within a given time. The creditor, in that circumstance, does not lose his preferred status merely because he does not perfect his interest until after the debtor has filed for bankruptcy. *See In re Parr Meadows Racing Assoc., Inc.,* 880 F.2d 1540, 1546 (2d Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).
>
> ....
>
> The purpose of this exception to the rule of the automatic stay is to "protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects" by allowing them to perfect an interest they obtained before bankruptcy proceedings began. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6327.

*Makoroff v. City of Lockport,* 916 F.2d 890, 891–92 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991).[6]

Of the three sections referenced in section 546(b), section 545, dealing with statutory liens, is the most relevant. Under section 545(2), the trustee has authority to avoid the tax liens for years 1986 and 1987, because these liens were neither perfected on the date of the commencement of the case, November 1, 1985, nor were they enforceable against the trustee on that date. *See* S.Rep. No. 989, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 1978 WL 8531, at *196 ("The trustee may be viewed as a bona fide purchaser, so that he can take over any such designated items free of tax liens even if the tax authority has perfected its lien."). Because Iron County's tax lien is avoidable under section 545, Iron County may take priority only if the trustee's section 545 avoiding power is limited by state law. More precisely, in applying section 546(b) to the present case, this court must determine whether, under Utah law, county tax liens, through perfection which relates back to a previous attachment date, take priority over existing perfected security interests. If the court finds that, in fact, such tax liens do relate back and take priority, the court then must determine how far back such liens relate.

At this point, Utah law becomes dispositive. As to the first question—Does perfection of county tax liens relate back to a previous attachment date and take priority over existing perfected security inter-

---

**6.** The House Report, referenced in *Makoroff,* explains the application of section 546(b) with an example involving purchase money security interests, those security interests in which the post-petition perfection of the security interest relates back to the pre-petition date on which the security interest attaches. *Id.* at 892 n. 1. Under a typical purchase money security inter-

est scenario, attachment occurs prior to the bankruptcy petition. The petition, however, intervenes before perfection. Under section 546(b), if state law so provides, the interest, such as the purchase money security interest, may be perfected post-petition, if the creditor's interest has attached pre-petition.

ests?—Iron County argues that Utah law answers the question in the affirmative, permitting real property tax liens to take priority over properly perfected mortgage interests. In support of this proposition, Iron County cites *Union Central Life Insurance Co. v. Black,* 67 Utah 268, 247 P. 486 (1926). "However, the *Union Central* decision only holds that a *personal property* tax lien filed against real property of the owner of the personalty is superior or prior in right to a mortgage lien on the realty which antedates the assessment and levy of the tax on the personal property." *Nelson v. Stoker,* 669 P.2d 390, 395 (Utah 1983) (emphasis in original). "[The] decision does not hold, explicitly or implicitly, that *all* tax liens are given a special priority." *Id.* (emphasis in original). Presumably, real property tax liens, such as those at issue in the present matter, do take priority over mortgage liens, but Iron County has offered the court no legal authority to support this proposition. Nevertheless, in light of the bankruptcy court's order of May 12, 1990, granting Iron County priority for tax years 1984 and 1985, and the fact that neither party disputes the point, this court acknowledges that properly established real property tax liens take priority over perfected mortgage interests.

Assuming that real property tax liens take priority over existing perfected security interests, the ultimate issue for resolution is how far back these tax liens relate or from what date priority is reckoned? Iron County addresses the issue in the alternative. First, Iron County argues that it has an ever-present interest in property subject to its jurisdiction. This view was adopted by the Fourth Circuit in *Maryland National Bank v. Mayor of Baltimore,* 723 F.2d 1138, 1142 (4th Cir.1983). Under the Fourth Circuit's interpretation of Maryland law, "the [state's] interest is ever-present." *Id.* Without reference to either Utah statutes or case law, Iron County argues, and would have this court find, that under Utah law, like under Maryland law, government has an ever-present interest in property under its jurisdiction. The court, however, will not grant to the county an interest not clearly articulated in statutes or case law.

█ Contrary to the view adopted by the Fourth Circuit, the reasoning of the Second and Third Circuits articulated when addressing the precise issue is dispositive of the issue. The Second Circuit in *Lincoln Savings Bank v. Suffolk County (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1545 (2d Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990), notes that

> The automatic stay is a crucial provision of bankruptcy law. It prevents disparate action against debtors and protects creditors in a manner consistent with the bankruptcy goal of equal treatment ...
>
> This equitable treatment requires that all creditors, both public and private, be subject to the automatic stay.... Recognizing this, congress used broad language which prohibits "all entities", 11 U.S.C. § 362(a), including "governmental unit[s]", 11 U.S.C. § 101(14), from moving against a debtor's property during the pendency of the bankruptcy proceedings.

*Id.* (citations omitted). The Third Circuit in *Equibank v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 85–86 (3rd Cir.1990) adopted the Second Circuit's reasoning. Because this court finds *Parr Meadows* and *Equibank* to be in accord with both the plain language of and the policies underlying the automatic stay, the court adopts the reasoning of the Second and Third Circuits.

Iron County, apparently seeking support in Utah law for its ever-present interest argument, urged at oral argument that Iron County's interest, as illustrated by Utah Code Ann. § 59–2–309, relates back five years. Section 59–2–309, which allows the assessing authority to assess property which has escaped taxation retroactively for a period of five years, is not dispositive of this issue. The court acknowledges that case law interpreting section 59–2–309 concludes that "the lien may relate back to the 1st day of January of the year in which the proper levy should have been made." *Anson v. Ellison,* 104 Utah 576, 140 P.2d 653, 656 (1943). Factually, however, section 59–2–309 is inapposite, because the present

case does not deal with property which has escaped taxation. Neither, as Iron County argues, does section 59–2–309 implicitly illustrate government's ever-present interest in real property. Section 59–2–309 merely establishes a limitation on period in which government can collect property tax. The sounder argument for establishing the date on which the government's interest arises is found elsewhere in Utah statutes. Section 59–2–1325 provides that "[a] tax upon real property is a lien against the property assessed.... These liens attach as of January 1 of each year." Utah Code Ann. § 59–2–1325 (1991). As of the petition date in November 1985, the liens for tax years 1986 and 1987 had not arisen. Accordingly, the county's perfectible interest is not continual, but rather arises yearly and relates back no further than January 1 of each year.

Finally, Iron County urges that the post-petition real estate taxes were a "reasonable and necessary cost and expense of preserving" the estate. Appellant Br. at 16. The court acknowledges that the prohibitions of the automatic stay may hinder the government in the collection of funds needed for its continued operation and "from receiving full compensation for services that may benefit the debtor or the debtor's property," such as fire protection. *In re Parr Meadows,* 880 F.2d at 1545. It is equally true, however, that the automatic stay is necessary to the effective and fair liquidation or reorganization of the bankrupt estate. *See id.* If the court accepted Iron County's argument, the government would be beyond the prohibitions of the automatic stay, and the power of the estate and the court to reach an equitable resolution of the case would be seriously undermined. *See id.* The court does not believe that Congress envisioned such a result.

Therefore, the tax liens for 1986 and 1987 are not entitled to priority because the automatic stay prohibits the creation or attachment of these lien post-petition. The rule which the court announces today and which was adopted by the bankruptcy judge in his final order is based on the sounder legal footing. Accordingly, the order of the bankruptcy court is AFFIRMED.